## HAYDEN & SMITH vs. SAMPLE.

1. A bond for an attachment conditioned "to pay all damages which may accrue to the defendant in consequence of the attachment," will extend to damages occasioned by any proceeding in the suit, and to costs and expenses attending the trial of a plea in abatement to the affidavit.

2. In a suit upon a penal bond, a general demurrer will not lie to a count assigning several breaches if one be good.

3. Where the defendant, who had a verdict on a plea in abatement to the affidavit in attachment, brings suit upon the bond, alleging a failure to prosecute with effect, the truth of the affidavit in the attachment suit can not be enquired into.

| | |
|---|---|
| 10 | 215 |
| 55a | 437 |
| 10 | 215 |
| 61a | 300 |
| 10 | 215 |
| 70a | 666 |
| 10 | 215 |
| f151 | 287 |

## APPEAL from Cooper Circuit Court.

HAYDEN & ADAMS, *for Appellants:*

1st. The demurrers should have been 'sustained; because, the breaches were too general.— It does not appear from any of the breaches that an issue upon the affidavit had been made and tried; although, the damages, if any, would grow mainly out of the trial of that issue; and in fact, the attachment bond does not cover any damages that might arise out of any proceeding in the suit, such as the trial of the issue referred to. The first breach alleges a judgment that might have been given after a plea to the merits, and surely, a defendant in an attachment would have no right to sue upon the attachment bond after pleading to the merits. The second breach alleges that damages had accrued in consequence of the attachment, but does not state how or on what account they accrued;—and the third breach is as general, with the exceptions of the recitals of the affidavit being made; but even this breach does not allege that there was any plea in abatement, and trial had upon the same, which was necessary before the plaintiff could recover according to the 12th section of the attachment law of 1839.

2nd. The attachment bond sued upon did not extend to any damages arising out of any proceeding in the suit, such as the issue upon the affidavit and the damages consequent upon

the trial thereof. Yet the damages assessed mainly had reference to this proceeding. See the condition of the bond—and section 3rd of the statute of 1839, referred to above.

3rd. The appellants were not* concluded by the verdict and judgment in the attachment suit, from showing that the affidavit upon which the attachment was sued out was true, and consequently that the defendant (appellee in this Court,) sustained no damages. It will be recollected, that the parties to this suit, are not the same as those in the attachment suit, and upon the breach that damages had been sustained in consequence of the attachment, they would undoubtedly have a right to show that the breach was not true—although there had been judgment upon the demurrers, yet under the statute concerning penal bonds, Digest 1835, page 431, section 7, the truth of the breaches are to be enquired into and passed upon by the jury ; and under this statute the appellants had a right to show that the attachment had been properly issued and served. They certainly could not be estopped from doing this by the judgment in the original attachment suit—as they are entire strangers to that judgment.

The Court cannot judicially see or know that any of the labor or expenses of taking depositions were necessary, or pertinent to the cause, without seeing the issue made, and proofs taken to support it.

LEONARD, *for Appellee :*

*First.* The judgment was rightly given against the demurrer.

I. The condition of the present bond extends to the expenses, &c., incurred by Sample in the defence of the attachment suit, and is not limited to the damages sustained by the mere seizure of the goods. Act of 13th February, 1839, title " Attachment," page 6, sec. 3. Act of 6th February, 1837, sec. 1, title " Attachment."

II. A general breach in the words of the condition is sufficient, 1 Chitty's Plead. 326 ; 2 Saund. Rep. 181, b. c. Post Master General United States vs. Cochran, 2 John. Rep. 414. Hughes vs. Smith & Miller, 5 John. Rep. 168. Smith vs. Jansen, 8 John. Rep. 111.

III. If this, however, be otherwise, the count contained a good specific breach in the averments " that Sample's property was seized by virtue of the attachment, and he compelled to expend his money in the defence of the suit, whereby he incurred damages in consequence of the attachment to a specific amount, which the defendants had not and would not pay," and the demurrer being to the whole count, one good breach is sufficient. The People vs. Brush. 6 Wend. R. 458. Pinckney vs. Inhabitants of East Haddon, 2 Saund. 379.

*Second.* The testimony given by the plaintiff of the proceedings upon the plea in abatement, and his expenses incurred in supporting that plea, was properly received. The objection, on the trial, was the same involved in the demurrer to the count, that these damages were not within the condition of the present bond—and has already been considered.

*Third.* The depositions taken in the original suit and offered by the present defendants to establish the truth of the attachment affidavit, were properly rejected. The only questions for the jury on this inquest, were the truth of the breaches assigned, and the amount of damages sustained. The rejected depositions were not relevant to these questions, and if relevant, having been taken between other parties, were not competent evidence.

*Fourth.* The jury were properly directed as to the law of the case.

All the instructions, except the fourth, asked by the defendants, involve only the same questions that have already been considered. The answer to this instruction is, that these defendants cannot object that Sample's merchant's license, was applied for before, but not actually issued, until his goods were restored, and then ante-dated, so as to cover the whole time. If, however, they may make the objection, it is manifestly no reason for withholding from him the damage he sustained by the loss of the sale of his goods, when the very reason why he

had no license, may well have been that by the act of the defendants, he had no goods to sell, and of course needed no license.

*Fifth.* The damages assessed were warranted by the evidence, and are not excessive.

McBRIDE, J., *delivered the opinion of the Court.*

This was an action of debt instituted in the Cooper Circuit Court by the State, to the use of Sample against the defendants, Hayden & Smith, upon their bond, dated May 18, 1842, payable to the State, for $3927 04. The bond was subject to a condition, which after reciting that Faucett, Peabody & Kelly, were about to institute a suit by attachment in the Howard Circuit Court against Sample, provided, that this bond should be void, if the plaintiffs prosecuted their suit with effect and without delay, and paid all damages that should accrue to the defendant or any garnishee, in consequence of the attachment.

The declaration sets out the bond and condition, and assigns breaches, that although suit had been instituted by attachment in the Howard Circuit Court, by Faucett, Kelly & Peabody against Sample, yet, the plaintiffs had not prosecuted their suit with effect and without delay, but had so prosecuted it, that judgment was given therein, dismissing the same ; that although damage to the amount of $3000 had accrued to Sample, in consequence of the attachment, yet Faucett, Kelly & Peabody had not, and would not pay the same; and that although Faucett, Kelly & Peabody had caused the bond now sued on, with a declaration in debt and affidavit of one C. H. Bent, declaring (among other things,) that he had good reason to believe, and did believe, that the debt sued for was contracted out of this State, and that Sample had secretly removed his property to this State, with intent to defraud his creditors, to be filed in the Clerk's office of the Howard Circuit Court; and upon this bond, affidavit and declaration, had procured a writ of attachment against the property of Sample, to be issued and delivered to the Sheriff of Howard County, and Sample's personal property to the amount of $3000 to be seized by virtue of the writ, and had so prosecuted the suit that Sample was compelled to, and did lay out $1000, and incur large liabilities, and spend much time in the defence of the suit, and damage to the amount of $3000 had in this manner accrued to Sample in consequence of the attachment ; yet Faucett, Kelly & Peabody had not, and would not, pay the same.

The defendants demurred to the declaration, and judgment being given upon the demurrer, for the plaintiff, an enquiry into the truth of the

breaches, and the amount of damages sustained thereby, was taken before a jury at the September Term, 1845, of the Circuit Court. Upon this enquiry, the plaintiff offered in evidence a transcript of the judgment and proceedings in the original attachment suit, from which it appeared, that on the 18th May, 1842, Faucett, Kelly & Peabody, filed in the office of the Clerk of the Howard Circuit Court, a declaration in debt, against Sample, on affidavit of C. H. Bent, an agent for the plaintiffs, and the bond now sued on executed by Hayden as principal, and Smith as security. The affidavit stated that the defendant was indebted to the plaintiffs in the sum of $1963 52, and that the debt was contracted out of the State, and that the defendant had secretly removed his property to this State, with intent to defraud his creditors. Upon the filing of these papers, the Clerk issued an attachment to Howard County, against Sample, for the amount sworn to, interest and costs. At the return term, the defendant pleaded that he did not secretly remove his property to this State, with intent to defraud his creditors ; and upon this plea, issue was taken, and after a mis-trial in October, 1842, a verdict was found in December, 1843, for the defendant, upon which he had judgment abating the suit, and for his costs. The defendant objected to so much of this transcript as contained the proceedings upon the issue on the plea in abatement, but the objection was overruled, and the transcript read.

Lewis Criglar testified, that as Sheriff of Howard County in 1842, he levied an attachment upon Sample's stock of merchandize, in his store at Fayette, took the key, and closed the store for 8 or 10 days, when Sample gave Marley and Kring as security for the re-delivery of the goods, and re-opened his store. There were more goods in the store than were necessary to secure the sum directed to be attached, but Sample told witness he intended to give security in a few days, and witness took the whole stock. When the attachment was levied, the store had been opened but a few days, and Sample had no license to sell. When he commenced business, he had applied to witness for a merchant's license, and witness directed him to go on and sell, and he would issue him the license at a future day, and afterwards accordingly did grant him a license, dated at the time he commenced business—this had been the practice in Howard County.

Mr. Marley testified, that he and Mr. Kring become security for the re-delivery of the goods to the Sheriff, upon an agreement that Mr. Richie, who was a clerk in the store, should sell the goods at retail, and place the proceeds in their hands as an indemnity against their liability.

In the course of three or four weeks, about $300 was paid to Mr. Kring, and $100 to witness, which was all paid, or requested to be paid, to the securities.

S. Bynum testified, that there were two jury trials of the issue on the plea in abatement; upon the first trial the defendant read the depositions of about thirty witnesses, besides examining several witnesses in Court, and upon the second trial, he read the depositions of about sixty witnesses; the plaintiff's testimony was not quite as voluminous upon either trial.

Col. Davis testified, that he and Mr. Hayden were counsel for the plaintiffs, in the original attachment suit, and that Mr. Leonard and Mr. Belt were counsel for the defendant; that it was usual in such cases to engage two counsel on a side; that the issue was twice tried, and a good deal of professional labor necessary in the cause; that he and Mr. Hayden charged their client a fee of about $226, which was ten per cent. on the amount of the debt collected, and he thought Mr. Leonard's professional services in the cause were worth at least $100.

The plaintiff then read in evidence parts of the depositions of G. Taylor, W. Hendricks and C. Cushing, taken in the State of Indiana; and the deposition of H. M. Cochran, J. Cochran and J. C. Ogden, taken in Platte County, in this State—to which the defendants objected, upon the ground that the matters stated were irrelevant to the issue.

G. Taylor testified, that depositions in the original attachment were taken before him, as a Justice, at Madison, in Indiana, upon two occasions—one at the instance of the defendant, and the other at the instance of the plaintiffs. In the first taking, ten or twelve days were occupied; in the last, six days were occupied. Mr. Sample attended personally with his counsel (Mr. Cushing) every day. Depositions were also taken at Madison in the case before Justice Morelidge, when about a week was consumed on this occasion.

Mr. Hendricks testified, that he attended to the taking of the testimony in Madison, for Faucett, Kelly & Peabody, and that Mr. Cushing attended for Mr. Sample,—that they were engaged twenty days or more in this business, and that the usual counsel fee in such business was $5 per day.

Mr. Cushing testified, that he attended to the taking of depositions in the case at Madison, before Justices Taylor and Morelidge, and before the Mayor, Park; that Mr. Sample was twice at Madison on this business, and attended every day the depositions were being taken; that

witness was engaged twenty days, and charged Mr. Sample $95 for his services.

H. M. Cochran testified, that Sample went twice to Madison to attend to the taking of depositions in the original cause, and once to Plattsburg, in Clinton County, for the same purpose ; that witness was a clerk in Sample's store, in Fayette, when the attachment was levied ; that he was doing a good business at the time, and while the store was closed was paying a heavy rent and other expenses.

Mr. Ogden testified, that Mr. Sample was at Clinton County, in August, 1843, taking depositions in the original cause, and that the expense of traveling from Fayette to Clinton County and back again, would be between $35 and $40.

J. Cochran testified, that Mr. Sample was at Madison, taking depositions in the attachment suit, in August, 1842, in January, 1843, and that in October, 1843, witness saw him in the city of Louisville, on his way to Madison, for the third time to attend to the taking of depositions in the original cause.

The plaintiff then introduced Mr. Stapp, who testified that the distance from Fayette to Madison, by water, which he considered the most usual route, was 800 miles, and the cost of going and returning, about $40 or $50—and here closed.

The defendant then produced and offered in evidence the depositions in the original suit, to prove the truth of the affidavit, upon which the attachment was issued. This proof was objected to by the plaintiff, and rejected by the Court ; and no further evidence was offered or given.

The plaintiff then asked the Court to instruct the jury as follows :—

1st. In this case it is the duty of the jury to enquire into the truth of the breaches of the bond, assigned in the declaration, and assess the damages occasioned by such breaches, and that these are the only matters submitted to them.

2nd. The jury in the present case are not to enquire whether the original attachment was rightfully sued out, as that matter was settled by the proceedings in the original suit, and cannot be now drawn in question in this suit.

3rd. In estimating the damages sustained by the plaintiff, the jury cannot take into their consideration, in mitigation of the same, that the original plaintiffs, Faucett, Kelly & Peabody, were delayed in the collection of their debt.

Which were severally given and excepted to by the defendants.

The defendants then asked the Court to instruct the jury as follows:—

1st. They are to disregard, in their retirement, all and every part and parcel of the evidence given by the plaintiff, with reference to the value of the services rendered him by Leonard and Belt, as his attornies in said suit in attachment, so far as the same were rendered by them as attornies in support of the plea in the nature of a plea in abatement, which was read by plaintiff in this cause, and filed by said Sample in said suit.

2nd. That the jury must disregard all the evidence in regard to the taking of depositions by said plaintiff to support his plea, in the nature of a plea in abatement, the time consumed therein, the expenses incurred about the same, and the fees paid counsel and attornies in reference thereto.

3rd. That in this cause the plaintiff is not entitled to recover any damages except what accrued in consequence of the attachment mentioned in the transcript of the record read in evidence by the plaintiff.

4th. That if the jury believe from the evidence that the attachment aforesaid was levied upon the goods of the plaintiff, and that at the time of the levy he had no license to vend goods by retail as a merchant, under the laws of the State, and had no such license until after the goods were released, that then the jury cannot find any damages on account of his being deprived of making sales whilst he had no license.

The Court gave the third instruction, but refused to give the others, to which refusal the defendants excepted.

The jury assessed the plaintiff's damages at $580, for which he had judgment, after motions for a new trial and in arrest of judgment were overruled. These motions assign the usual grounds in such cases. Thereupon the defendant appealed to this Court, and preserved the foregoing facts in a bill of exceptions.

The questions raised on the demurrer to the declaration, are first in order and will be so considered.

It is contended by the defendant's counsel, that the condition of the bond sued on, does not extend to or embrace the costs, which accrued on the trial of the issue on the plea in abatement. The Supplemental Act of 1837, Session Acts, p. 8, §1, provides that "no attachment shall hereafter be issued, &c., until a bond executed, &c., shall be filed, &c., conditioned that the plaintiff shall prosecute his suit with effect, and without delay, and that he will pay all damages that may accrue to the defendant, or any garnishee, in consequence of the attachment." The

amendatory act of 1839, Session acts, p. 6, §3, provides that "the bond to be given by the plaintiff shall be executed by him or some responsible person for him, as principal, and one or more securities, resident householders of the County in which the action is to be brought, in a sum of at least double the amount of the demand sworn to, payable to the State of Missouri, conditioned that the plaintiff shall prosecute his action without delay and with effect, and shall pay all damages which may accrue to any defendant or garnishee, by reason of the attachment, *or any process or proceeding in the suit."* Section 11 of the last recited act declares that "in all cases where the property or effects of any defendant shall be attached, he may file by himself or attorney a plea in the nature of a plea in abatement, without oath, putting in issue the truth of the facts alleged in the affidavit, on which the attachment was sued out."

Because the Legislature at the subsequent session have added to the provision concerning the bond to be executed by the plaintiff, the words "*or any process or proceeding in the suit,"* it is insisted that the bond in this case, is not sufficiently comprehensive to embrace the costs which accrued on the issue framed under the provisions of the 11th section above recited. We are of opinion, however, that these costs may very properly be considered as costs accruing to the defendant "*in consequence of the attachment."* All the costs of the subsequent proceedings, authorized by the act, may be regarded as a "consequence of the attachment," without the aid of the latter sentence in the 3rd section of the act of 1839; otherwise the defendant could only recover nominal damages, for the mere seizure of his property by the officer, whatever might be the extent of his damages consequent on the proceedings under the attachment.

To give to the condition of the bond, the construction contended for, would circumscribe its operation so as to afford no adequate protection to the defendant.

It is said that the breach assigned in the declaration is too general; whilst it is replied, that although general, it is in the words of the condition, and therefore sufficient. The authorities referred to in support of the breach, appear to sustain the principle, but it is not necessary in this case, to investigate that point, inasmuch as a specific breach is assigned in the count, and the demurrer being to the whole count, was very properly overruled. In 6 Wend. Rep. 458, the Supreme Court of N. York use the following language on this point: "But is the objection to an insufficient breach removed by other breaches that are sufficient in the

same count of the declaration?" In Pinkney vs. The Inhabitants of East Hadden, 2 Saund. 379, it was said by Saunders's counsel, and the Court concurred with him in opinion, that if covenant be brought, and divers breaches are assigned, and some are good and others bad, and the defendant demur to the whole declaration, the plaintiff shall have judgment for those breaches that are well assigned, and shall be barred of the residue. If damages are assessed on the bad breach, he must enter a *remittitur damna.* The same doctrine is recognized in Orton vs. Butler, 5 Barn. & Ald. 712 ; 1 Dowl. & Ryl. 361. If this is the rule to be applied to actions of covenant, it surely must be applicable to debt on bond. If, therefore, the other breach specified in the declaration is well assigned, the plaintiff must have judgment on the demurrer, notwithstanding the defectiveness of the first; but they will be precluded from assessing any damages under that breach.

If, then, the bond covered the costs which were incurred in the trial of the issue on the plea in abatement ; and if the demurrer to the declaration was rightfully overruled by the Circuit Court, then the evidence offered and given (but excepted to by the defendants,) on the part of the plaintiff to show the amount of the costs and his expenses incurred in trying that issue, was properly permitted to go to the jury.

Had the defendants the right to enquire into the truth of the issue made upon the plea in abatement, by a re-trial of that issue in this case ? If so, then the defendants would have a right to go behind the judgment of the Court, and show that the Court had committed an error either in law or fact, and that the plaintiffs in the former suit should have recovered a judgment, and therefore they were not liable on their bond, for a failure on the part of their principal to prosecute his suit with effect. It would be a novel mode of setting aside, vacating and annulling a judgment. But the truth of the affidavit made, to obtain the attachment, was not in issue here, and could not be put in issue,—the only enquiry in reference thereto, and material in this case, was the fact that an issue had been made, tried and found against the plaintiffs, and that damages had, by reason thereof, accrued to the defendant.

The only remaining enquiry arises on the refusal of the Court to give the fourth instruction asked for by the defendants. The facts are, that the plaintiff was selling goods without license, under a permit from the Sheriff, whose duty it is to grant license—that a few days after he opened his store, the attachment was levied upon his goods, and his store was closed by the officer—during the time his doors were closed by the Sheriff, he did not obtain license, but did so immediately after h

commenced selling, and the license was ante-dated, so as to cover the whole time he had been engaged in business. This practice prevailed in Howard County. In all this, we see no sufficient reason to withhold from the plaintiff his right to recover damages in this action,—the fault, if any existed, was the Sheriff's, and not his—he had done what was necessary on his part,—made his application to the officer empowered to grant the license, who from some cause failed to grant the license, and told him to proceed and sell. This permit might not avail the party, if the State should complain.

From a review of the whole case, we cannot say that the damages assessed by the jury are excessive.

The other Judges concurring herein, the judgment of the Circuit Court is affirmed.