WILLIAM F. DOLAN & CO. *et al.* V. J. W. TOPPING *et al.*

1. SPECIAL SHERIFF—*Void Appointment by Clerk of Court —Attachment.*
A clerk of the district court appointed a special officer to serve proc-
ess in an attachment proceeding, upon an application which did not
show that the court was not in session in the county, or that the
judge was absent therefrom, and which failed to show that the sheriff
and his deputies were interested in the proceeding, out of the county,
or in any way disqualified to act; but it contained as an only reason,
that the plaintiff's attorney had looked with diligence for the sheriff
or his deputy, but in vain, and that it was important that papers
should be served at once; in fact, the sheriff and his deputies were in
the county, and several deputies were in the county seat, qualified
and available to serve process, at the time the order of attachment
was issued and placed in the hands of the special officer. *Held,* Upon
a motion to discharge the attachment levied by the special officer,
that his appointment was unauthorized and the levy invalid.

2. ATTACHMENT—*De Facto Officer.* Under such circumstances, the serv-
ice of the order of attachment and the seizure of property by the
appointee cannot be regarded as the acts of a *de facto* officer.

3. ——— *Who May Move to Discharge.* Persons not parties to the
action in which the attachment was issued, but who in other actions
had procured the attachment of the property levied on by the ap-
pointee, are entitled to come into court and move to discharge the
property from the attachment wrongfully levied by such appointee.

*Error from Ness District Court.*

ATTACHMENT by *Dolan & Co.* against Peters and others.
On the order overruling their motion to discharge a prior
attachment levied on the same property at the suit of *Top-
ping,* plaintiffs bring error.

*Thomas Berry,* and *Buchan, Freeman & Porter,* for plaintiffs
in error:

1. The pretended order of attachment issued in the action
was never served by the sheriff, nor by a deputy sheriff, nor
by any undersheriff of said county, nor by any other person
legally authorized to serve said pretended order of attach-
ment. The sheriff neither appointed him nor knew of his

21—51 KAS.

appointment until after Cooper had pretended to act, and never ratified the pretended appointment. It was made by the clerk, who has no authority to make any appointment of a person to serve process except as provided in § 702 of the code of civil procedure.

The law presumes that the sheriff is present in the county at all times, either in person or by his deputies, the same as any other officer. Moreover, the evidence in this case shows that the sheriff, Rogers, was in the county all of that day, and had at least three deputies present in Ness City all of that day.

The sheriff is made responsible on his official bond for the default or misconduct of his undersheriffs or deputies; ¶ 1763, Gen. Stat. of 1889; but he certainly would not be responsible on his bond for the conduct of a person claiming to be appointed "special sheriff," as Cooper claimed to be in this case. If the grounds relied upon for Cooper's appointment are sufficient to authorize the clerk to appoint a "special sheriff" should be held good, then it follows that, whenever the sheriff is outside of the county seat engaged in the service of papers in the county, and his deputies are not found at once, a party can have any person appointed to exercise the duties of sheriff, serve writs of all kinds, seize the property of individuals with perfect impunity, and not be required to furnish a bond for the protection of the rights of individuals. Parties could wait, and watch for an opportunity when the sheriff would be outside of the city limits, and have reckless persons appointed to take his place, who would act without warrant of law, if the circumstances were such that it happened to be to the interest of parties to have them do so.

2. If the property was lawfully attached by the alleged special sheriff, it was abandoned by him and by Topping, and the attachments of the several junior creditors levied thereon have ever since continued valid and subsisting liens thereon. A temporary interruption of the custody of the officer is fatal to the lien. *Walker v. Foxcroft*, 2 Me. 270. Topping himself says he gave the key of the building to Sheriff Rogers to

enable him to levy an adverse attachment. The possession of this property, actual as well as constructive, was never in I. C. Cooper, or his custodian, Topping, from the time Topping turned the key over to the sheriff, because the sheriff held the actual possession of it until he delivered it to the receiver under the order of the court.

If Cooper had been entitled to the custody of the property as against the sheriff, he should have taken steps to secure possession by a suit to recover the possession. But no steps of this kind were taken. He lost any lien he ever had, if he had any, and neither he nor his custodian, Topping, ever claimed or asserted the right to the possession of this property after turning it over to the sheriff.

*N. H. Stidger*, and *Geo. S. Redd*, for defendants in error:

1. Counsel for plaintiffs in error seem to think that it is a dangerous power to place in the hands of a clerk; for, upon any pretext, a careless person, and without giving a bond, may be appointed to serve attachments, and property may be attached with impunity, and innocent persons suffer without recourse. This is not true; for the person whom the clerk appoints, when he assumes to act, thereby assumes all the liabilities of the officer. Besides, the person upon whose application he is appointed is liable for his wrongful acts. See, under a similar statute, *Harvey v. McAdams*, 32 Mich. 475. An officer is presumed to do his duty, and to appoint a person who is responsible for his acts. In *Mayers v. Wicks*, 15 Ohio St. 584, under a similar statute, the supreme court, by way of *dictum*, say that a bond should be taken in such a case, but it is not required.

Admitting that the cause, as shown for this appointment, was probably insufficient to justify the appointment, and that the clerk, should have required a stronger showing, yet we insist that the clerk having authority in law to make the appointment, and having made the same, and the appointee having accepted and acted, he thereby became clothed with all the powers of a *de facto* officer, and his acts were as

binding on the third parties and the public as the acts of the regular sheriff, and this though there be forty sheriffs and deputies in the sheriff's office at the time ready and willing to serve the process. See *Hunters v. Ferguson*, 13 Kas. 462; *Reinhart v. The State*, 14 id. 318; *Comm'rs of Saline Co. v. Anderson*, 20 id. 300; *The State v. Williams*, 5 Wis. 308; *Doty v. Graham*, 5 Pick. 487; *Ex parte Strang*, 21 Ohio St. 610; *The State v. Alling*, 12 Ohio, 18.

But it may be argued that, there being a *de jure* sheriff who was also the *de facto* officer, there could be no other *de facto* officer. That would be true if Cooper were claiming to be the sheriff. In this particular case, only one person was claiming to act, and that was Cooper. When he was appointed, his appointment ousted the regular sheriff of any jurisdiction or authority over the particular process he was appointed to serve, and, as to that particular process, he became a *de facto* officer at least. All that is required to make a *de facto* officer is some color of authority in the person appointing, and the further fact that the appointee assumes to and does act.

2. If Cooper was a legally-constituted special officer to serve the process in this particular case, did he or the plaintiff abandon the property attached so as to lose the attachment lien?

The burden of proof rests upon the plaintiffs in error to show these facts if possible. The testimony nowhere discloses any facts that would justify the court in arriving at the conclusion stated in that proposition. On the other hand, it shows a clear intention on the part of both the plaintiff below and the officer who made the attachment to hold the property subject to the attachment lien. It nowhere discloses a single act of either the plaintiff or the officer making the levy that would justify these persons who are pleased to call themselves "junior attaching creditors," or the officers having their attachment, to believe that the plaintiff had abandoned his attachment lien on the property.

*Thomas Berry*, and *Buchan, Freeman & Porter*, for plaintiffs, in error, in reply:

The plaintiffs in error have not at any time admitted or conceded any right or claim in Topping to the attached goods, or the proceeds of the same, or any part thereof, prior in time to their own attachment. On the contrary, their claims have been hostile to that of Topping from the time the sheriff took possession of the goods. *Green v. McMurtry*, 20 Kas. 193, and authorities cited; *Long v. Murphy*, 27 id. 375; *Grocery Co. v. Records*, 40 id. 119; Civil Code, § 532.

The opinion of the court was delivered by

JOHNSTON, J.: This proceeding involves the question whether a person appointed as special sheriff by the clerk of the district court in a certain case, upon the mere statement by the plaintiff that he had looked with diligence but in vain to find the sheriff or his deputy to serve the process, may legally serve an order of attachment. J. W. Topping began an action in the district court of Ness county against M. L. Peters, and procured the issuance of an order of attachment, which was directed to I. C. Cooper, as special sheriff. The following statement or application by an attorney of Topping's was the only basis for the appointment:

"STATE OF KANSAS, NESS COUNTY, SS.

"*N. S. Calhoun, Clerk of the District Court:* I have looked in vain and with due diligence for sheriff or deputy to serve papers in case of J. W. Topping *v.* M. L. Peters. It is of great importance that the papers be served at once, and I ask that if sheriff be not found at once a special officer be appointed to serve said papers. I am attorney for plaintiff.

[Signed]      E. C. LITTLE."

The application was verified. Indorsed upon the application was the following:

"STATE OF KANSAS, NESS COUNTY, SS.

"*To Whom it may Concern:* For good reasons shown, I have this day appointed I. C. Cooper to serve the summons and writ of attachment in the action now pending in the district

court of Ness county, Kansas, wherein J. W. Topping is plaintiff and M. L. Peters is defendant.

"Witness my hand and the seal of this office, of this 19th day of October, 1887.

"[SEAL.]        N. S. CALHOUN, *Clerk of District Court.*"

Cooper served the summons and order of attachment, seized the stock of goods belonging to Peters, locked up the store and turned the key over to Topping. Three days afterward, W. F. Dolan & Co., the Ridenour-Baker Grocery Company, and, later, the William B. Grimes Dry Goods Company, brought attachment actions against M. L. Peters, and the sheriff of the county, with orders of attachment, proceeded to the store building where the goods were, and obtained the key from Topping, when the sheriff unlocked the building and levied the attachments procured by the plaintiffs in error. The sheriff continued in the possession of the goods until they were turned over to a receiver appointed by the court. Afterward, the plaintiffs in error moved to discharge the attachment obtained by Topping, upon the grounds: First, that it was never served by the sheriff nor by any deputy or under-sheriff of the county, nor by anyone else legally authorized to serve the same; and, second, that if Cooper had any authority to serve the attachment, it was abandoned by Cooper and Topping, and the attachment lien was lost. These motions were overruled, and the plaintiffs in error come to this court complaining of the rulings.

If Cooper had no authority to serve the order of attachment issued in behalf of Topping, the motion to discharge should have been sustained. In § 701 of the civil code, it is provided that

"An order for a provisional remedy or any other process, in an action wherein the sheriff is a party or is interested, shall be directed to the coroner. If both of these officers are interested, the process shall be directed to and executed by a person appointed, as provided in the next section."

Section 702 provides that

"The court or judge, or the clerk, in the absence of the

judge from the county, for good cause, may appoint a person to serve a particular process or order, who shall have the same power to execute it which the sheriff has. The person may be appointed on the application of the party obtaining the process or order, and the return must be verified by affidavit. He shall be entitled to the same fees allowed to the sheriff for similar services."

In the act relating to counties and county officers, provision is made for the election of sheriff, and the giving of a bond by him for the faithful performance of his duties. He is authorized to appoint an undersheriff, and as many deputies as he may think proper, and he is held to be responsible on his official bond for the default or misconduct of his undersheriff or deputies. He and his undersheriff and deputies are authorized and required to serve and execute all process issued or made by lawful authority and directed to the sheriff. (Gen. Stat. of 1889, ¶¶ 1759–1769.) Where there is no sheriff in a county, or when the sheriff is a party to a cause, or whenever affidavit is made that the sheriff will not, by reason of partiality, prejudice, consanguinity, or interest, faithfully perform his duties in any case commenced or about to be commenced, the clerk of the court directs the process to the coroner, who is required to execute it in the same manner as the sheriff might have done. (Gen. Stat. of 1889, ¶¶ 1777–1779.) In this case, neither the sheriff nor the coroner were parties to the cause nor interested in the action. The sheriff did not appoint Cooper, nor did he know anything of his appointment until after he had attempted to serve the process, nor has he ever ratified the same. As a matter of fact, the sheriff was present in the county during the day on which the appointment of Cooper was made, and was in his office at the county seat a portion of the day. Two or more of his deputies were in the county seat during the day and at the time when the appointment was made.

We think the showing made to the district clerk was insufficient, and the appointment made by him without authority. The general theory of our law is, that process shall be

served by an officer who has given an under-

1. Special sheriff — void appointment by clerk of court — attachment.

taking as the statute requires for the protection of the rights of all persons who may be affected by his action. If the sheriff or any of his deputies, or the coroner, acting in his stead, wrongfully seizes property, the party injured by their wrongful acts may have recourse upon their official bonds. When there is no sheriff in the county, or when he is a party and is interested or otherwise disqualified to serve process in a particular cause, it is provided that the process shall be directed to the coroner, who is required to furnish a bond with like conditions as that given by the sheriff. When all of these officers are disqualified to act, which can rarely be the case, provision is made for the appointment of a special officer. It will be observed, however, that in such cases the appointment is to be made by the court or the judge, and the clerk is only permitted to exercise the authority of appointment in case of the absence of the judge from the county; and before he can act, good cause must be shown. It will be observed in the present case that good cause was not shown; for all that appears, the judge of the district court was in the county when the clerk undertook to appoint. It was not shown that the sheriff and his deputies were absent from the county or disqualified. Indeed, it appears that the sheriff and his deputies were qualified and available to serve the process which was directed to the special officer; and it further appears that the special officer knew of their presence when he proceeded to serve the papers. It will hardly do to permit a party who may have some selfish purpose to subserve to wait until the sheriff and his deputies are out of sight, and then pass by the court or judge and obtain from the clerk the appointment of a special officer, who gives no bond and may be wholly irresponsible, to levy an attachment or seize and hold the property of others. Under the theory of the defendants in error, this practice would be permitted; but the statutes, fairly interpreted, do not justify either such theory or practice.

The case of *Mayers v. Wicks*, 15 Ohio St. 548, is cited to show

that an appointment may be made by the clerk for any reason other than those enumerated in the statutes. That case is not an authority, as it simply held that the provisions of the code did not take away from the court the inherent power to appoint special masters for the sale of real property. It is urged, that even if the clerk had no authority in law to make the appointment, yet, having made it, and the appointee having accepted and levied the writ, he thereby became clothed with all the power of a *de facto* officer, and his acts are therefore as binding as those of the regular sheriff or his deputy. There is no room for the application of the *de facto* theory in this case. No collateral attack is made on the authority of Cooper to serve the orders of attachment, but his right to serve the attachment is made in the action wherein the attachments were issued. There are no outside or innocent parties to be protected, but all who are interested or affected are proper parties to this proceeding, and the sufficiency of the attachment was a proper question for consideration. It appears that the sheriff was present, a qualified and available officer, and hence there was no room for a special or *de facto* officer.

2. Attachment— de facto officer.

There is some contention that the plaintiffs in error have no standing in court to contest the validity of an attachment in an action wherein they are not parties. Originally, they were not parties to the action of Topping *v.* Peters, but, being interested in the property, and in discharging it from the attachment wrongfully levied thereon, they were entitled to come into court and make the motions which they did. (*Long v. Murphy,* 27 Kas. 375; *Grocery Co. v. Records,* 40 id. 119; Civil Code, § 532.)

3. Who may move to discharge.

Limiting the decision to the facts in this case, we hold that Cooper had no authority to levy an attachment, and that the motions to discharge should have been sustained. For this purpose the judgment will be reversed, and the cause remanded to the district court.

All the Justices concurring.