THE STANDARD IMPLEMENT COMPANY *et al.* v. THE LANSING WAGON WORKS.

**No. 9734.**

1. INTERPLEA — *claiming priority for attachment over that in main case, is collateral attack on latter.* Where, in the action under which the first attachment was levied, junior attachment creditors file interpleas claiming priority of lien, such interpleas are to be treated as in the nature of a collateral attack; and the interpleaders cannot defeat the prior attachment by showing that the claim sued on was not yet due, or that the debt, which was alleged in the petition to be for goods sold and delivered, was in fact evidenced by promissory notes; there being no charge of fraud, and the justice of the plaintiff's claim being clearly established.

2. ATTACHMENT LIEN — *not lost as to intervening attachments by amendment of petition and new attachment for increased amount.* Where suit is brought on an account for goods sold and delivered and an attachment is issued for the amount claimed, an amendment of the petition, increasing the amount claimed, and the taking out of a second summons and order of attachment, do not operate as a dismissal of the original action, nor to discharge the first attachment; but the lien obtained under the first attachment remains valid as against intervening attaching creditors.

Error from Cowley District Court.   Hon. A. M. Jackson, Judge.   Opinion filed April 10, 1897.   *Affirmed.*

This is a controversy between attaching creditors of P. G. Van Vleet.   The Lansing Wagon Works, a corporation, brought suit against Van Vleet on the fifth of February, 1892, to recover the sum of twenty-

five hundred dollars for goods sold and delivered; which sum, it was alleged, was then due and payable. An attachment was issued, and levied on the property of the defendant. On the next day, the Standard Implement Company brought suit against Van Vleet on a promissory note for one thousand dollars and interest; and the Grand Detour Plow Company also brought two suits : One, on a past-due note for $1,644 and interest; the other, on two notes not due, for $3,059. Attachments were issued in both cases, and levied on the same property, subject to the prior attachment of the Lansing Wagon Works. On the eighth of February, the plaintiff filed an amended petition, alleging an indebtedness of $7,372 due it from Van Vleet for goods sold and delivered. Another affidavit for an attachment was filed, and on it an order of attachment for $4,872 was allowed by the probate judge. Thereupon, the clerk issued an order of attachment for $7,374. This last attachment was levied on a small amount of other property, but no rights are claimed under it in the controversy in this case. On February 23, 1892, the court, with the consent of all the parties to this case, ordered the attached property to be sold and the proceeds brought into court. On the fifth of April, 1892, the Standard Implement Company and the Grand Detour Plow Company filed separate motions in the case brought by the Lansing Wagon Works, asking leave to interplead in that action. On the ninth of April a judgment by default for $7,372 was entered in favor of the Lansing Wagon Works against Van Vleet, and, on the same day, judgments, also by default, were entered in favor of the Standard Implement Company and the Grand Detour Plow Company for the amounts of their respective claims. On the eighteenth of April, the motions asking leave to interplead were sustained; and,

on the same day, interpleas were filed, alleging the indebtedness of the plaintiff to the interpleaders, the issuance and levy of the attachments, that the account sued on by the Lansing Wagon Works on the fifth of February, 1892, was not due at the time the action was commenced, that no order allowing an attachment had been made by the judge, and that such attachment was, therefore, improvidently issued and void. On the sixth of May, the sheriff returned into court the order directing the sale of the attached property, with $4,141.22 as the net proceeds of the sale. Issues were raised by answer to the interpleas, and were tried on the eleventh of November, 1892. Testimony was offered showing an indebtedness from Van Vleet to the plaintiff of the amount for which suit was brought; but it appeared that this indebtedness, instead of being on an account, was evidenced by fourteen promissory notes, none of which were due, except one for eleven hundred dollars. The court made a general finding in favor of the plaintiff, and dismissed the interpleas with costs. The interpleaders bring the case here, alleging error in this order.

*McDermott & Johnson*, for plaintiffs in error.
*Madden & Buckman*, for defendant in error.

ALLEN, J. I. The question for our consideration in this case is the scope of the inquiry into the validity of the plaintiff's cause of action, in a controversy with other attaching creditors who, by interpleas, question the validity of the prior attachment. It was developed on the trial of this case that while the cause of action stated in the petition was one for goods sold and delivered, the debt was in fact evidenced by promissory notes, only one of which was due; that an attachment for twenty-five hundred dollars had been obtained as upon a debt past due when in fact only eleven hun-

dred dollars was due, and that on a promissory note not set up in the petition. It is insisted that, under the issues formed by the interpleas and the answers thereto, the interpleaders had the same right to litigate the plaintiff's claim that the defendant in the action would have had; and that they might make any attack on its right to prosecute the case by attachment and obtain a lien on his property that the debtor himself might have made; that, in "this case, the plaintiff had no cause of action on an account for goods sold and delivered, and had no mature demand of any kind against the defendant, except the one on the note for eleven hundred dollars. On the other hand, the defendant in error contends that the case of the interpleaders was in the nature of a collateral attack; and that they can question the plaintiff's attachment only on the ground of fraud, or want of jurisdiction over the attached property. The authority for the proceedings under consideration is found in section 45a of the Code of Civil Procedure, which reads as follows : ''Any person claiming property, money, effects or credits attached, may interplead in the cause, verifying the same by affidavit, made by himself, agent or attorney, and issues may be made upon such interpleader, and shall be tried as like issues between plaintiff and defendant, and without any unnecessary delay.'' The question is raised by the defendant in error whether the interpleaders had such a claim to the property as is contemplated by this section of the Code. It is said that, at the time the plaintiff's attachment was levied, the interpleaders neither had nor claimed any interest in, or lien upon, the attached property. It is argued that a subsequent attachment cannot confer such a claim upon the property as the law contemplates. We shall not attempt to decide this question, but shall assume that the practice followed is per-

missible, and shall consider only the question as to the scope of the inquiry. It has been held that, under the provisions of section 532 of the Code, any person interested in property levied on under an order of attachment may move to discharge the attachment as to the property claimed. *Long Brothers v. Murphy*, 27 Kan. 375. And this right has been held to extend to subsequent attaching creditors. *Dolan v. Topping*, 51 Kan. 321; *Bank of Santa Fe v. Haskell Co. Bank*, 54 id. 375. In *Dolan v. Topping*, supra, it was held that the person who attempted to serve the attachment was not an officer, *de jure* or *de facto*, his appointment having been made by the clerk of the court without authority. In *Bank of Santa Fe v. Haskell Co. Bank*, it was held that the record failed to show valid grounds for an attachment. *Ashton v. Clayton* ( 27 Kan. 626 ) is mainly relied on by the plaintiffs in error. But in that case it is said that the claim of the plaintiff under which the prior attachment was levied, was, at the time the action was brought, a mere fiction ; that the persons named as plaintiffs did not bring the action, nor authorize it to be brought; and that Ashton, while having a valid claim himself, could not obtain a lien by unauthorized use of the name of Burton, Moses & Brother in prosecuting a claim which had been in fact paid. A claimant occupying the position of the interpleaders in this case is usually called an intervenor. In Shinn on Attachments and Garnishments, Vol. 1, § 429, it is said :

"An intervenor cannot defend in the attachment suit in lieu of the defendant and defeat it for irregularities in the proceedings as against such defendant. . . . He cannot avail himself of such errors as would be simply sufficient for reversal in a direct proceeding, but must confine himself to such objections as he could make if attacking them in an independent collateral action."

In *Dickinson v. Cowley* ( 15 Kan. 269), construing a.
statute, relating *to* attachments on proc-
esses. issued by justices of the peace,
substantially similar *to that* under con-
sideration in this case, it was held :

1. Claiming prior-
ity of attach-
ment is collateral
attack, when.

" One who comes in under chapter 164 of the laws.
of 1872, and claims property attached or levied on
does not thereby concede the regularity of the pro-
ceedings, nor may he, like the defendant, avail him-
self of errors which are simply sufficient for reversal
in direct proceedings therefor.   He claims adversely
to the proceedings, and can only make such objections.
as he could if attacking them in an independent col-
lateral action."

In 3 Encyclopedia of Pleading and Practice, 69, it
is said :

"Creditors of the defendant who have, subsequent
to the attachment, acquired liens upon the attached
property, as by judgment or attachment, may move
to dissolve the prior attachment ; but not upon the
ground of mere irregularities in the proceedings which
have been waived by the defendant himself."  '

Even on a. motion to discharge an attachment the
merits of the action are not in issue, unless necessa-
rily involved in the statutory ground for the attach-
ment set up in the plaintiff's affidavit.   *Chouteau v.
Boughton,* 100 Mo. 406 ; *Kohler v. Agassiz,* 99 Cal. 9.

"A junior attaching creditor may intervene in a.
prior attachment suit and here contest his rights with
the plaintiff in that suit, but he cannot be let in to
defend the suit and dispute the grounds of the attach-
ment, in lieu of the defendant, nor to defeat the at-
tachment for mere errors or irregularities in the
proceedings, but only for imperfections which are un-
amendable and render the procedings void." *Sanno-
ner v. Jacobson & Co.,* 47 Ark. 31.   See also *Baker v.
Ayres,* 58 id. 524 ; *Carter v. O'Bryan,* 105 Ala. 305, 16.
Southern Rep. 894 ; *Bateman Brothers v. Ramsay,* 74
Tex. 589.

The question whether the account was due arose on the merits of the case. The defendant himself, by his silence, admitted that it was due, and allowed judgment to be taken against him. There is no question whatever as to the justness of the debt, and it was competent for the parties to have made it due at any time. The question was not one which the interpleaders had a right to litigate. No fraud whatever is charged against the plaintiff. The justice of its demand is unquestioned. The judgment rendered against Van Vleet is conclusive as against the interpleaders, not only on all mere irregularities which might have been cured by amendment, but on all technical defenses which the defendant was at liberty to waive.

II. It is urged that by filing an amended petition on the eighth of February the·original cause of action was abandoned by the Wagon Company, and that its lien under its first attachment was thereby lost. In support of this contention, *Heidel v. Benedict* ( 31 L. R. A. 422 ), *Fargo & Cutshaw* ( 12 Ind. App. 392, 39 N. E. Rep. 532 ), and *Bauer v. Deane* ( 33 Neb. 487, 50 N. W. Rep. 431 ), are cited. We do not deem it necessary to make any extended comment on these cases. Under our Code, great liberality in making amendments is allowed. The nature of the plaintiff's demand was not changed by the amended petition, though the amount was largely increased. There was no change of parties, as in *Fargo v. Cutshaw,* supra. It is said that in the amended petition a claim not due is joined to one past due. The amended petition contains but one count, which, interpreted liberally, as it must be against a collateral attack, states one cause of action for $7,372, due and payable, for goods sold and delivered. While it was not stated in express terms that the claim was due,

it was stated that the amount was owing, and that it had not been paid, though often reqested; and there was nothing indicating that the goods were sold on credit extending beyond the time of the filing of the petition. The amendment was certainly permissible; and the fact that a second summons was issued and served does not conclusively prove that the plaintiff intended to abandon the suit first commenced. On the other hand, the record shows that the second petition was filed as an amended petition in the original action. In *Cutler v. Lang* ( 30 Fed. Rep. 173 ), it was held :

2. Attachment lien not lost, when.

"An attachment is not dissolved by an amendment of the writ and declaration increasing the amount claimed, made after another attachment has intervened, where the first attaching creditor, upon obtaining judgment for the increased amount and taking out execution, directs the sheriff to levy only for the amount originally claimed." To the same effect are *Tilton v. Coffield* (93 U. S. 163) and *Henderson v. Stetter* (31 Kan. 56).

The record brought to this court does not show what order was in fact made for the distribution of the fund brought into court on the sale of the attached property. No claim of priority appears to have been made by the Wagon Company, except under the first attachment for twenty-five hundred dollars, and it is to be presumed that that claim alone was passed on by the court. A question is made as to the plaintiff's ownership of the notes sued on at the time of the commencement of the action, but this, also, was involved in the merits of the case. Even if some of the notes had been negotiated, they were all in the possession of the plaintiff at the time of the trial; and most of them appear to have never been negotiated. We perceive no error in the record, and therefore affirm the judgment.

Doster, C. J., concurring.

JOHNSTON, J. (dissenting). The only difference of opinion in the case is as to the extent of inquiry that may be made upon the application or intervention of a subsequent attaching creditor. The practice in our state differs widely from that of others, where, under their statutes, intervention is considered to be an independent proceeding. Here, the subsequent attaching creditor or other person who claims an interest may come into the original proceeding, and by motion or interplea directly attack the validity or sufficiency of the first attachment. That this may be done is as well established as any rule which has been announced by the court. *White Crow v. White Wing*, 3 Kan. 276 ; *Long Brothers v. Murphy*, 27 id. 375 ; *Ashton v. Clayton*, 27 id. 626 ; *Bodwell v. Heaton*, 40 id. 36 ; *Grocery Co. v. Records*, 40 id. 119 ; *Dearborn v. Vaughan*, 46 id. 506 ; *Boot and Shoe Co. v. August*, 51 id. 53 ; *Manufacturing Co. v. August*, 51 id. 59 ; *Dolan v. Topping*, 51 id. 321 ; *Implement Co. v. Parlin & Orendorff Co.*, 51 id. 566 ; s. c. id. 632 ; *Bank of Santa Fe v. Haskell Co. Bank*, 54 id. 375.

When he comes in in this way, he acquires a standing in court, and a right to show that the former attachment was wrongfully obtained or is for any reason invalid. In *Ashton v. Clayton*, supra, it was held that he might show that the claim upon which the first attachment was issued was not just, that in fact it had been paid, and that there was therefore nothing due from the defendant to the first attaching creditor. In *Grocery Co. v. Records*, supra, it was held that an assignee had a right to intervene and attack an attachment upon the ground that the facts stated in the affidavit for the attachment were untrue. In *Dolan v. Topping*, supra, it was held that the junior attaching creditor might attack the first attachment

upon the ground that it was not served by the proper officer. In *Bank of Santa Fe v. Haskell County Bank*, supra, the junior attaching creditor was permitted to show that the grounds upon which the first attachment was obtained were insufficient and that the facts stated in the affidavit for attachment did not warrant the issuance of the writ.

The law, as declared in the syllabus of the case, and to which the members of the court were all agreed, is, that "where a judgment creditor has levied upon personal property subject to the attachment of another party, he is entitled to come into court and move to discharge the property from the attachment if the writ has been improvidently or improperly obtained." An ordinary attachment can only be had upon a claim that is due. Upon a debt not due, an attachment cannot be issued, except it is granted by the court or judge. Civil Code, §§ 230–6. An attachment upon a debt not due, issued without such authority, is absolutely void. In such a case the action must be dismissed; and, even where the order of attachment is granted, if it is afterward determined that the grounds therefor were not true, then also the action should be dismissed. *Pierce v. Myers*, 28 Kan. 369. To the extent that the debt in this case was not due, the attachment issued thereon without the permission of the court or judge was a fraud as against subsequent creditors whose attachments were rightfully obtained, and they are entitled to intervene for the purpose of setting aside the former attachment. *Davis v. Eppinger*, 18 Cal. 378; *Patrick v. Montader*, 13 id. 434; *Express Company v. Lucas*, 36 Ind. 361; 1 Shinn on Attachment, p. 760 and note.

The absence of an order authorizing the issuance of an attachment in such a case is more than a technical defect or irregularity. It goes to the question of au-

thority to issue; and, in states where one other than the defendant is not permitted to have the attachment dissolved because of irregularities, he may nevertheless have it dissolved, by intervention or otherwise, where it has been illegally issued. *Walker v. Roberts*, 4 Rich. 561; 1 Shinn on Attachment, § 344. If, as the court has already determined, he may show that the claim under which the attachment was levied was not just or valid, and, as it has determined in another case, that the grounds for attachment were not sustained, and, in still another case, that the attachment was not properly served, it is difficult to see why he cannot attack the attachment on the ground that it was issued without authority. In *Dickinson v. Cowley* (15 Kan. 269), referred to in the prevailing opinion, a defect in the affidavit upon which the attachment was issued was held to be a fatal defect, and one which might be taken advantage of by a third party. The fatal defect was in stating the grounds of the attachment in the disjunctive, and Mr. Justice Brewer, in delivering the opinion of the court, said that "there was, therefore, no warrant for the issue of the attachment, and the plaintiff in the suit obtained no lien on the goods by the service of the writ." It was held by the Supreme Court of Wisconsin that the failure to state the amount of the indebtedness in the affidavit for attachment was a fatal defect, and that the subsequent lien-holder might attack the validity of the attachment so obtained. *Hawes v. Clement*, 64 Wis. 152.

In *Siebert v. Switzer* (35 Ohio St. 661), it was held that, while a junior creditor could not take advantage of mere informalities in the attachment, for the purpose of establishing his priority, yet he might show that the attachment was issued without authority of law, and thereby defeat it. In that case, the affidavit

and the petition were both filed upon the same day, but the affidavit preceded the petition a short time, and it was therefore held that the clerk had no authority to issue the order of attachment, and, further, that it was void as against a subsequent creditor. In the present case, the clerk had no authority to issue the order of attachment for the debt not due, and, for the same reason, the order was invalid as against a subsequent creditor. Some authorities are cited which seem to be against the decisions of our own court, but they are based upon statutes unlike our own. As was said in *Kohler v. Agassiz*, referred to in the prevailing opinion : "The attachment laws of the several states differ in so many particulars, that without the utmost caution in comparing their provisions with our own, we are in constant danger of being led astray, or unduly influenced by decisions apparently in point, but in reality resting on a different basis."

In *Bateman Bros. v. Ramsey* (74 Tex. 589), cited as an authority for the ruling of the trial court, it was held that, while the writ of attachment could not be quashed for informalities, a junior attaching creditor might intervene in the suit of the first attaching creditor for the purpose of testing the validity of the debt upon which it was founded ; that he might show that the grounds upon which the writ was sued out did not exist, and that the affidavit on which it was predicated was known to be false by the party making it. Where a junior attaching creditor intervenes by motion or interplea, a strict rule limiting the grounds of attack is not justified. It is unlike an attack upon a judgment or an established lien. He is contesting an incipient lien, only, and, until it is perfected and determined, it should be held assailable because the writ was improvidently or improperly issued, and,

especially, upon any ground affecting its validity. Upon the question of the right to contest an illegal attachment in such cases, see, also, *Jacoby v. Drew*, 11 Minn. 408; *Shilling v. Dean*, 36 Ill. App. 513.