No. 22,261.

ELIZABETH GREGORY, *Appellee,* v. THE UNITED STATES FIDELITY AND GUARANTY COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. ATTACHMENT BOND—*Amendment of Petition—Surety Not Discharged.* A surety on an attachment bond is not discharged by an amendment of the petition which does not make the position of the surety worse or different.

2. SAME—*Consolidation of Cases—Surety Not Discharged.* It is no defense to an action on an attachment bond that the original action in which the bond was given was consolidated and tried with other actions.

3. SAME. In such a case, the surety company having sustained no prejudice either by the consolidation or by the amendments to the pleadings, it was not entitled to notice either of the amendments or of the consolidation.

4. SAME—*Land Levied upon Conveyed—No Defense Available to Surety.* For reasons stated in the opinion, the surety in an action on an attachment bond cannot avail itself of the fact that plaintiff, prior to the time the bond was executed, had conveyed to another the legal title to the real estate upon which the attachment was levied.

5. SAME—*Measure of Damages in Action on Attachment Bond.* Expenses necessarily incurred in procuring the dissolution of the attachment wrongfully issued, including attorneys' fees and the cost of depositions, may be recovered as damages in an action on the attachment bond; and on the facts stated it is held that in the case where the attachment was issued a trial on the merits was necessary in order to establish the fact that there was no indebtedness, and consequently that the attachment was wrongfully issued. (*Parish v. Brokerage Co.,* 92 Kan. 286, 140 Pac. 835.)

Appeal from Jewell district court; RICHARD M. PICKLER, judge. Opinion filed November 8, 1919. Affirmed.

Gregory v. Guaranty Co.

*R. W. Turner,* and *Donald F. Stanley,* both of Mankato, for the appellant.

*D. M. McCarthy, J. R. White,* both of Mankato, and *F. W. Mahin,* of Smith Center, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The action was one to recover on an attachment bond for damages sustained by the unlawful attachment of real property. The plaintiff recovered, and the surety company appeals.

In January, 1915, the Harbor Business Blocks Company sued Elizabeth Gregory to recover on four promissory notes, and asked judgment for the sum of $4,343 with interest. An affidavit for attachment was filed, bond executed, and the writ was levied upon certain real estate as the property of Mrs. Gregory. On February 3, 1915, there was filed in the same court another action between the same parties to recover the sum of $1,755.60, upon a note which had matured after the first action was commenced. On March 2, 1915, by agreement of the parties, it was ordered by the court that the cases be consolidated and proceed as one case. The Harbor Business Blocks Company was given time to file, and thereafter filed, an amended and supplemental petition, which included the causes of action set out in both the original actions, and also a cause of action arising on another promissory note. The amount of recovery asked for in the consolidated case was $7,778.60 and interest. Mrs. Gregory filed her answer and cross petition, in which she sought affirmative relief in the sum of $2,241.80, and asked for the cancellation of each of the notes set out in the several causes of action. The consolidated action proceeded to trial, resulting in a verdict and judgment in favor of Mrs. Gregory. The promissory notes were canceled, and Mrs. Gregory recovered judgment for the amount claimed in her cross petition. The judgment was appealed to this court and affirmed. (*Harbor Business Blocks Co. v. Gregory,* 102 Kan. 33, 169 Pac. 191.)

The present action was filed by Mrs. Gregory against the surety company in January, 1918. The trial resulted in a verdict against the surety company on the attachment bond for $2,090. With the general verdict, the jury returned certain findings of fact which will be referred to later.

1. One of the main contentions is that the amendments setting up new causes of action against Mrs. Gregory discharged the attachment. The following statement from 2 R. C. L. 852 is cited and relied upon:

"But where a new count to the declaration is filed, for a different cause of action from that upon which suit is brought, the attachment will be dissolved."

The only case cited in the note, *Norris v. Anderson*, 181 Mass. 308, does not support the text. In that case the validity of the attachment was not questioned because of any amendment to the pleadings, but because the writ was amended to correct a mistake in the name of the defendant. There was a statement in the opinion after the real question was decided, to the effect that—

"To dissolve the attachment or make it ineffectual as against a subsequent attaching creditor, purchaser or surety, the amendment must be such as to let in some new demand or cause of action." (Syl. ¶ 4.)

In support of the foregoing statement the opinion cites a number of other Massachusetts cases, which, however, are controlled by a statutory provision with respect to amendments in civil suits in order to "enable the plaintiff to sustain the action for the cause for which it was intended to be brought." (Pub. Stat. Mass. 1882, ch. 167, § 42.) The statute provides that the adjudication of the court allowing an amendment shall be conclusive evidence of the identity of the cause of action.

"But no subsequent attaching creditor, or purchaser of property attached in the suit, or bail, or any person other than the parties to the record, shall be bound by such adjudication, unless he has had due notice of the application for leave to amend, and opportunity to be heard thereon, . . . such third parties shall have the right to except or appeal." (Id. § 85.)

While the authorities upon the question we have before us are not entirely harmonious, some of the confusion in the textbooks and encyclopedias doubtless results from failing to distinguish the cases controlled by statutes like the one referred to. Moreover, an examination of the Massachusetts cases will show that they recognize the rule that unless the effect of the amendment would be to impose on the surety a greater liability than he had originally assumed, by letting in a new cause of action, he is not released by the amendment. (*Town-*

Gregory v. Guaranty Co.

*send National Bank v. Jones,* 151 Mass. 454, and cases cited
in the opinion.)

The statement in some of the authorities that such an
amendment dissolves the attachment as against the junior
or subsequent attaching creditor or purchaser, evidently means
merely that the attachment lien of the plaintiff cannot be ex-
tended to cover any increased demand made by such an amend-
ment. Doubtless the fact that an amendment was made for
the fraudulent purpose of increasing the demand of the plain-
tiff would furnish ground for dissolving an attachment at
the instance of a junior attaching creditor. Certainly a surety
has no cause to complain of an amendment bringing in a new
cause of action, unless an attempt is thereby made to extend
his liability beyond the original claim of the plaintiff in the
attachment. The surety in the first instance binds himself
to pay any damages sustained by virtue of the unlawful at-
tachment about to be levied, and he is not concerned because
of an amendment to the pleadings, unless the effect of the
amendment is to increase the amount of his liability. So
with a junior attaching creditor; he has a right to claim that
he attached the property, subject to the prior attachment, and
that his lien would be prejudiced if the first attachment lien
were increased by an amendment. Parties to actions, as well
as sureties on attachment bonds, understand that amendments
may be made to the pleadings, that new parties may be
brought in, that the original action may be consolidated with
another action, and new issues raised between parties who
were not originally concerned in the litigation when the bond
was given; but the surety, unless his liability be increased
by reason of the amendment, has no cause to complain. Thus
it has been held that it is not proper to allow an amendment
increasing the amount of the claim beyond that stated in the
affidavit for attachment, but that the allowance of such an
amendment will not affect the attachment where plaintiff
takes judgment for no greater sum than that originally
claimed, or upon obtaining judgment for the increased amount
directs the sheriff to levy only for the amount of his original
claim. (*Casey Mfg. Co. v. Dalton Ice Co.,* 94 Ga. 407.)

In *Laighton v. Lord,* 29 N. H. 237, it was held that—

"The enlargement of the *ad damnum* in the writ, or the alteration of
the grounds or cause of action, by increasing the same, or by inserting

new causes of action by way of amendment, by the agreement of the parties to the action or the order of the court, will not dissolve the attachment made in the service of the writ, as against subsequent attaching creditors, provided the judgment taken be not for another cause of action than that contained in the writ, nor for a greater sum than that for which the party was entitled to a judgment upon his declaration at the date of the service of it." (Syl. ¶ 2.)

In the opinion it was said:

"The ground upon which bail is discharged, or an attachment is dissolved, as against a subsequent attaching creditor, by reason of any alteration or amendment of the process, is the injury resulting to the vested rights of such parties." (p. 259.)

In Waples on Attachment, 2d ed., section 91, it is said:

"Sureties on an attachment bond are not discharged by an amendment of the petition which does not make their position worse or different."

"Any proper amendment may be made provided the action be still for the same demand upon which it was brought; and neither bail, nor receiptors, nor subsequent attaching creditors have any right to complain when the amendment does not in fact prejudice their rights, by increasing the responsibility of bail or receiptors, or tend to diminish the surplus property to which such subsequent attaching creditor may be entitled, according to the conditions of the action at the time of the attachment." (1 Encyc. Pl. & Pr. 676.)

The amendments setting up new causes of action did not relieve the surety company from liability for whatever damages plaintiff sustained by reason of the unlawful attachment upon the cause of action on which the original suit was founded, to an amount, of course, not exceeding the penal sum in the bond. Where the character of the original cause of action has not been changed by the amendments, the surety is not discharged. (6 C. J. 504.) Even in the case where junior attaching creditors attempted to intervene it was held, in *Implement Co. v. Wagon Works,* 58 Kan. 125, 48 Pac. 638, that an amendment of the petition of the first attaching creditor increasing the amount claimed, and the taking out of a second summons and order of attachment, do not operate as a dismissal of the original action, nor discharge the first attachment.

2. In one instruction the court charged, in substance, that neither the amendments to the cause of action in which the bond was given nor the consolidation of that action with other actions amounted to an abandonment of the first action. The

complaint that this was error brings up the next principal contention of the defendant, which is, that the effect of the consolidation released the surety from any liability from the date when the consolidation was made. Authorities are cited to the effect that when two or more suits are consolidated they must be conducted in every respect as one and the same and the rights of the parties adjudicated as if the several suits had been originally combined in one; that the several actions are discontinued, and the consolidated action is the only one left. (8 Cyc. 606; 4 Encyc. of Pl. & Pr. 701.)

We have no fault to find with these statements of the general effect of the consolidation of actions under our statute; but we cannot concur in the claim which defendant makes as to the consequences which follow from the consolidation. It is true, the effect of the consolidation is to join all the actions in one, and that the only judgment rendered is in the consolidated action, which necessarily settles all the issues involved. The statement that by the consolidation the several actions are discontinued merely means that no separate proceedings are thereafter taken in the original actions; pleadings filed entitled in one become a part of the pleadings in the consolidated action. None of the original actions is dismissed, but each stands on the docket waiting the action of the court in the consolidated action. The four causes of action against Mrs. Gregory in the suit in which the attachment bond was given, never lost their identity as causes of action. The action in which they were set out was merely consolidated for the purposes of the trial with other actions which did not concern the surety company, and the consolidation had no effect whatever upon its liability on the attachment bond.

In *Akins v. Holmes,* 89 Kan. 812, 133 Pac. 849, the trial court consolidated an action for specific performance with one for replevin, which was based upon the same contract. The case was first submitted to a jury, which returned findings of fact and a general verdict for the plaintiff. The court made findings of fact in favor of the defendant, set aside the findings and verdict of the jury, and rendered judgment for the defendant. It was held that the consolidation of the two actions for trial was proper, and that the court was authorized to make a final determination of the issues in both cases.

3. The bond of the surety company was executed by W. R. Mitchell, agent for the company, with authority to attach the seal of the company. The same W. R. Mitchell appeared as attorney for the Harbor Business Blocks Company in the trial, or in some of the proceedings in that case. The plaintiff insists that the surety company, through its agent acting as an attorney in the cause, had full notice and knowledge of all the proceedings in the trial, and therefore had not only notice of the consolidation and the amendments to the pleadings, but must be held to have consented thereto.

Everyone familiar with transactions in which surety-company bonds are executed, understands that the company acts through a local agent, who has authority to execute the bond and attach thereto the seal of the company, and that the authority of the agent is a limited one, and extends no further than to bind the company by those acts. The fact that the agent happens to be an attorney who becomes thereafter interested in the litigation in which the bond is given does not make him a general agent of the surety company so as to charge the company with notice of what takes place in the litigation. However, this is but the expression of our opinion upon a matter which, though raised in the briefs, it is perhaps unnecessary to decide, for the reason that the surety company was not entitled to notice of the consolidation, or of the fact that amendments were made to the pleadings. We have no statute, as in Massachusetts, requiring notice of amendments to pleadings to be served upon the surety in such a case; and, besides, as already observed, the surety company could in no respect be prejudiced, either by the consolidation or by the amendments.

4. Another complaint is that the plaintiff is not entitled to recover upon the bond because she was not the owner of the property at the time the attachment was levied. This contention overlooks an express finding by the jury that she was the owner of the real estate at the time the attachment was levied. It is true, she testified that before the land was attached she conveyed it to her daughter with an understanding that the daughter should reconvey to her upon demand, and that the purpose of the transfer was to prevent the Harbor Business Blocks Company from recovering against her on the various notes she had given; further, that after judgment was ren-

dered in her favor, her daughter refused to reconvey the property, and she was obliged to bring suit against the daughter for specific performance; and that in that suit the court rendered a decree that she was the owner of the property and entitled to a reconveyance. There are several reasons why the surety cannot avail itself of the fact that plaintiff made a conveyance. The legal title stood in the daughter, but the plaintiff was the equitable owner, and her interest was subject to attachment; the bond was executed to protect her from any damage she sustained by reason of the unlawful attachment of whatever interest she had in the property. The issue of ownership was submitted by the court to the jury in the present case, and the finding is that she was the owner of the property when the attachment was levied. The contention that her possession was not disturbed by the attachment is of no force. She was entitled to recover whatever expenses she incurred in procuring the dissolution of the attachment.

5. By their findings the jury allowed plaintiff $1,250 for attorneys' fees, reasonably paid in procuring the discharge of the attachment, $800 for expenses in procuring evidence to discharge the attachment, and $40 traveling expenses necessarily incurred in attending court. It is contended that these costs and expenses were not occasioned by the attachment. The argument is that the attachment, being a mere ancillary proceeding, it must be assumed that the plaintiff would have paid out just as much for the purpose of establishing her defense against the promissory notes, and for the purpose of recovering upon her cross petition (which was for the amount she had paid upon previous notes), as if there had been no attachment levied. Perhaps this is true, but in order to have the attachment dissolved it was necessary for her to establish the fact that she was not indebted upon the cause of action sued upon, and the same evidence also established her right to judgment for the cancellation of all the notes, and for the other relief granted. The defendant's contention in this respect is fully answered by the decision in *Parish v. Brokerage Co.,* 92 Kan. 286, 140 Pac. 835, where it was held that expenses necessarily incurred in procuring the dissolution of an attachment wrongfully issued, and the release of property unlawfully seized, including attorneys' fees and the cost of depositions,

may be recovered by the owner in an action on the attachment bond. There it was said:

"But the question of whether there was a debt which was justly due was tested on the final trial, and it was then determined that there was no indebtedness, and consequently an order was made vacating and setting aside the attachment. . . . In order to establish that there was no basis for this claim and that the appellee was not indebted to the appellant in any amount a trial of the merits was necessary." (p. 289.)

The authority cited by the defendant (6 C. J. 544) itself expressly states where a trial on the merits is necessary in order to dispose of the attachment, such fees are allowed. The defendant's theory that the decision in *Parish v. Brokerage Co.*, supra, is not controlling, rests to some extent upon the erroneous assumption that the consolidation of the actions, or the amendments to the pleadings, or both together, in some way dissolved the attachment as early as March 2, 1915.

It became necessary to take depositions in California for use on the trial of the consolidated case, and this occasioned the outlay of considerable money. Complaint is made that the evidence is not sufficient to sustain the allowance by the jury of $800 for these expenses, and the allowance for attorneys' fees. We think the evidence sustains the findings, and, besides, they have been approved by the trial court.

There are other complaints of error in giving and refusing instructions, which it is not necessary to comment upon, for the reason that they are predicated upon propositions already determined adversely to the defendant.

The judgment is affirmed.

## OPINION DENYING A REHEARING.

In a petition for rehearing our attention is called to a statement in the opinion to the effect that the judgment in the suit for specific performance (brought by plaintiff against her daughter) was offered in evidence, and that this is incorrect. The statement has been stricken from the opinion. The opinion in no respect rests upon the statement. There was a world of evidence to sustain the finding that Mrs. Gregory was the equitable owner of the property and that it was subject to attachment, although the legal title was in the daughter.

There is no force in the contention that Mrs. Gregory's interest was merely that of a mortgagee. Part of the method by which she sought to cover up her title consisted of a mortgage taken back from her daughter.

It is insisted that the opinion overlooked one important contention. In appellant's brief, under the subhead, "Effect of Consolidation," there was a discussion of several alleged errors, including error in consolidating the actions, errors in instructions, and error in permitting the petition to be amended during the trial by setting up a claim for attorney's fees in procuring the dissolution of the attachment. The opinion failed to comment upon the latter claim. Owing to the lack of orderly arrangement in the brief it was overlooked. The matter of amendments to pleadings rests in the discretion of the trial court, and there was no showing of any abuse of discretion. The amendment consisted of the words, "and for expenses in procuring and taking evidence in said cause." It did not, in any sense, enlarge the amount of the demand against the defendant. There was merely an objection to the amendment without any claim that appellant was taken by surprise. The matter was in the discretion of the trial court, and there is no merit in the claim that the court abused its discretion. (See, *Malone v. Jones,* 91 Kan. 815, 139 Pac. 387; *Stevens v. Vermillion,* 102 Kan. 408, 170 Pac. 807.)

Rehearing denied.