## ST. JOSEPH STOCK YARDS CO. v. LOVE et al.

No. 3553.    Decided January 21, 1921.    (195 Pac. 305.)

1. ATTACHMENT—BY GIVING REDELIVERY BOND, DEFENDANT DOES NOT WAIVE RIGHT TO DAMAGES FOR WRONGFUL ATTACHMENT. Under Comp. Laws 1917, §§ 6704, 6706, 6707, 6725, 6726, by giving redelivery bond, and thus repossessing himself of his property, a defendant does not waive his right to damages if the attachment was wrongfully sued out and he was wrongfully dispossessed.

2. ATTACHMENT—COUNSEL FEES INCURRED IN SUCCESSFULLY DEFENDING ATTACHMENT SUIT NOT RECOVERABLE. Under Comp. Laws 1917, §§ 6704, 6706, 6707, 6725, 6726, in an action against principals and sureties in a certain undertaking in attachment to recover damages for an alleged wrongful suing out of the attachment against plaintiff and for wrongfully attaching certain of its property, plaintiff could not recover counsel fees incurred in successfully defending the attachment suit; it not having been required to pay such fees or other costs in having the attached property released from the attachment.

3. MALICIOUS PROSECUTION—DAMAGES RECOVERABLE FOR ATTACHMENT INSTITUTED MALICIOUSLY WITHOUT PROBABLE CAUSE. If a plaintiff is actuated by malice and acts without probable or any cause in bringing an action, and is guilty of oppression in suing out attachment, defendant may obtain relief in a proper proceeding against such malice and oppression, and may recover not only his actual damages, but exemplary damages as well.[1]

4. COSTS—COSTS SHOULD NOT BE ALLOWED, EXCEPT WHERE PROVIDED BY STATUTE AND PERMITTED BY LONG USAGE. Courts should refrain from allowing the imposition of costs and expenses on the losing party, except such as are provided for by statute

---

[1] Cahoon v. Hoggan, 31 Utah, 74, 86 Pac. 763.

and such as by law and usage have been allowed in certain cases as necessary for the protection of legal rights.

5.    ATTACHMENT—COURT IN ACTION FOR WRONGFUL SUING OUT DID NOT ERR IN ALLOWING LEGAL INTEREST. In an action on the undertaking to recover damages for wrongful, suing out of an attachment, the district court did not err in allowing legal interest.[2]

Appeal from District Court, Second District, Weber County; *A. W. Agee,* Judge.

Action by the St. Joseph Stock Yards Company against Ed. Love and others. From judgment for plaintiff, defendants appeal.

AFFIRMED IN PART; REVERSED IN PART.

*Henderson & Johnson* and *Geo. Halverson,* all of Ogden, for appellants.

*M. E. Wilson* and *Booth, Lee, Badger & Rich,* all of Salt Lake City, for respondents.

FRICK, J.

The plaintiff, a nonresident corporation, commenced this action in the district court of Weber county, Utah, against Ed. Love and Otto Meek as principals and H. W. Dunn and M. L. Harbison as sureties on a certain undertaking in attachment. The object of the action was to recover damages for an alleged wrongful suing out of an attachment against the plaintiff and for wrongfully attaching certain of its property. There were additional parties to this action, but, in view that they were not served with process, the action was dismissed as against them, and they will not be further referred to in this opinion. In view that the pleadings are

---

[2] Citing *Fell* v. *Union Pac. Ry. Co.,* 32 Utah, 101, 88 Pac. 1003, 28 L. R. A. (N. S.) 1, 13 Ann. Cas. 1137.

quite long, and that the facts and issues are sufficiently reflected in the findings of the district court, we shall merely refer to the findings and to such parts only as are deemed necessary to a full understanding of the questions decided.

The district court, in substance, found that on the 7th day of August, 1917, in an action for the recovery of money then pending in the district court of Weber county, wherein the defendants Love and Meek were plaintiffs and the plaintiff herein was defendant, said Love and Meek applied for and obtained a writ of attachment against the plaintiff herein pursuant to our statute; that in conformity with said statute said Love and Meek, as principals, and Dunn and Harbison, as sureties, duly executed the undertaking required by our statute in the sum of $6,000, after which the writ of attachment aforesaid was issued (a copy of the undertaking is set forth in the findings); that as commanded by said writ of attachment the sheriff of Weber county duly levied upon certain mules, the property of the plaintiff herein, and took the same into his possession; that after said sheriff had held said mules for a period of four days the plaintiff, with a competent surety, duly made and delivered to said Love and Meek an undertaking as provided by our statute for the release of said mules from said attachment, whereupon said mules were by the sheriff released and returned to the possession of the plaintiff herein; that said writ of attachment was wrongfully obtained, in that upon a trial of the issues in said action it was determined that the plaintiff herein was not indebted to said Love and Meek in any amount whatever, and, further, that if any indebtedness ever existed in their favor the same had been released before the bringing of said action, and judgment was duly entered in said action in favor of plaintiff herein and against said Love and Meek, from which judgment they appealed to the Supreme Court, which court duly affirmed the judgment; that the plaintiff herein was compelled to and did expend the sum of $35 to pay the premium for the undertaking aforesaid and the sum of $800 as attorney's fees to defend said action in the district court and a further sum of $300 as attorney's fees to defend said

appeal in the Supreme Court and the additional sum of $80 for feed for said mules by reason of the four days delay (in transporting said mules) caused by said attachment, and $129.60 for costs taxed in the district court and $46.75 for costs taxed in the Supreme Court, the whole aggregating the sum of $1,391.75, with legal interest. The question of interest will be referred to in this opinion later. The court also found that plaintiff herein, at the time the attachment proceedings were commenced, was a corporation organized under the laws of the state of Missouri, and not subject to service of process within the state of Utah; that jurisdiction over the plaintiff herein was obtained solely by reason of said attachment; that the costs, expenses, and attorney's fees allowed by the court as aforesaid were incurred by the plaintiff herein for the purpose of releasing its property from said attachment. As a conclusion of law the court found that the plaintiff herein was entitled to judgment for the aggregate amount aforesaid with legal interest from the 1st day of January, 1918. Judgment was accordingly entered, from which the defendants appeal.

While the findings of the court are assailed in various ways, there are in reality but two propositions presented for decision: (1) That the court erred in allowing counsel fees as before stated; and (2) that it erred in allowing interest.

The first proposition is the principal one in the case and upon which counsel on both sides have devoted much space in their respective briefs. The question is of first impression in this jurisdiction, and, in view of the authorities, is not free from difficulty. In order to present the question in its various aspects, it will be necessary to refer somewhat at length to our statute, to the decisions of the courts, and to the various enactments upon which many of the decisions are based.

Our statute, Comp. Laws Utah 1917, § 6704, provides that an attachment may issue against any party who is a nonresident upon the sole ground that he is such nonresident. Section 6706 provides what must be stated in the affidavit for a writ of attachment and section 6707 provides that before a writ can issue the party demanding the same must enter into

a written undertaking with proper sureties in an amount not less than $200, and not to exceed the sum of $10,000, conditioned "that if the defendant recover judgment, or if the attachment be wrongfully issued, the plaintiff will pay all costs that may be awarded to the defendant, and all *damages which he may sustain by reason of the attachment,* not exceeding the sum specified in the undertaking." (Italics ours.) Section 6725 provides that the defendant may have the attached property released from attachment by giving, with proper sureties, what is commonly designated a redelivery bond, and we shall, in this opinion, refer to the same by that designation. Section 6726 reads as follows:

"The defendant may also, at any time, either before or after the release of the attached property, or before any attachment shall have been actually levied, upon reasonable notice to the plaintiff, apply on motion to the court in which the action is brought, or to the judge thereof, for the discharge of the writ of attachment, on the ground that the same was improperly or irregularly issued."

We have referred to section 6726 for the reason that it is contended by defendants' counsel that under statutes like ours damages can only be recovered in a proceeding instituted to resist the attachment or to have the attached property released therefrom, and not for defending the action in which the writ of attachment was issued.

It is further urged that, in case a redelivery bond is given by the defendant in the action, and his property is released therefrom and delivered to him, he waives his right to an action for damages for issuing the writ of attachment. Such is the holding of the Supreme Court of Washington in the case of *Gutter* v. *Joiner,* 56 Wash. 202, 105 Pac. 457, under a statute precisely like our statute, section 6726, supra. The decision is by a divided court, however, and in our judgment the law is correctly stated in the dissenting opinion of Mr. Justice Parker, which is concurred in by Mr. Justice Dunbar. The majority opinion seems to follow the case of *Brady* v. *Onffroy,* 37 Wash. 482, 79 Pac. 1004. We are not prepared to concede that the law, under a statute like ours, is correctly stated in the majority opinion in the Washington case. We think the

law is correctly reflected in the dissenting opinion of Mr. Justice Parker, where it is stated that at least those damages arising before the redelivery bond is given cannot be held to be waived. The authorities are quite numerous that in giving a redelivery bond the defendant does not waive his right to recover the actual damages which are occasioned as a result of wrongfully attaching his property. Such is the holding in the case of *Alexander* v. *Jacoby,* 23 Ohio St. 358, and in all the cases cited by plaintiff's counsel in support of their contention, and which are hereinafter specially referred to. We can see no good reason for holding that in giving a redelivery bond and thus repossessing himself of his property a defendant waives his right to damages, if it be shown that the attachment was in fact wrongfully sued out and he was wrongfully dispossessed of his property by virtue of the writ of attachment. There may be special reasons why a defendant should be permitted to substitute a bond for the property, and it may be to the advantage of both parties to have the property released from the attachment at once and returned to the defendant. Nor can we conceive of any good reason why in giving a redelivery bond the defendant should be estopped from recovering the damages he has suffered by being wrongfully dispossessed of his property, although he repossesses himself of the same by reason of the redelivery bond. We are therefore clearly of the opinion that under our statute the defendant does not waive the right to recover actual damages by reason of giving a redelivery bond.

We remark that it may well be that in giving a redelivery bond one may waive the irregularity, if any, in issuing the writ of attachment.

Proceeding now to a consideration of the first proposition, the question is, What are the elements of damage that may be recovered in an action upon the undertaking pursuant to which the writ of attachment was issued? It will be observed that the statute provides for such damages only as the defendant "may sustain by reason of the attachment." "At common law no damages are recoverable for an attachment which is merely wrongful and not instituted with malice and

without probable cause.'' 4 Cyc. 874. It is, however, also true that ''in a great majority of the states there are statutes which either expressly or by implication authorize the recovery by some form of procedure of at least actual damages, although the attachment be merely wrongful.'' Id. 874.

In 6 C. J. 544, § 1335, the law is stated thus:

"As a general rule, any allowance for attorney's fees in connection with a wrongful attachment must be limited to fees for services in connection with the attachment itself, and no allowance can be made for services in defending the principal action, in the absence of a stipulation therefor in the bond sued on or a statutory provision for such an allowance, and this has been held to be true, even though jurisdiction was obtained solely by attaching the property of a nonresident who subsequently appeared and defended the action. Such fees, however, have been allowed where both the main action and the attachment proceedings have been defeated; where the entire defense to the attachment action merely tended to show the wrongful issue of the attachment, or where a trial of the main action was necessary in order to dispose of the attachment."

We shall refer to the subject-matter of the last sentence of the foregoing excerpt when we come to consider the cases which are cited in support of plaintiff's contention.

In 2 Sedgwick on Damages (9th Ed.) § 682a, the rule is stated thus:

"On the attachment bond the plaintiff may recover his counsel fees and other legal expenses in procuring a dissolution of the attachment, but not expenses incurred in defending the principal suit, and if there were no expenses caused solely by the attachment proceedings, there can be no recovery on this account."

The same author in volume 1, section 237, says:

Damages "are recoverable if they can be separated from those which would have been incurred in any event in defense of the action, * * * but no recovery can be had for the general expenses of litigating the principal suit, even though the attachment for which the bond was given alone gave the court jurisdiction, and it was found to be wrongful.

The following cases fully sustain the text quoted from Sedgwick: *Frost* v. *Jordan,* 37 Minn. 544, 36 N. W. 713; *Gonzales* v. *De Funiak, etc., Co.,* 41 Fla. 471, 26 South. 1012; *Copeland* v. *Cunningham,* 63 Ala. 394; *Alenxander* v. *Jacoby,*

23 Ohio St. 385; *Johnson* v. *Farmers' Bank,* 67 Ky. (4 Bush) 283; *Northampton National Bank* v. *Wylie,* 52 Hun, 146, 4 N. Y. Supp. 907; *Hilfrich* v. *Meyer,* 11 Wash. 186, 39 Pac. 455, and *Porter* v. *Knight,* 63 Iowa, 365, 19 N. W. 282. The defendants also cite *State* v. *Fargo,* 151 Mo. 280, 52 S. W. 199.

In *Alexander* v. *Jacoby, supra,* in speaking of the elements of damage in actions on the attachment bond, it is said:

"Compensatory damages  *  *  *  include reasonable costs and expenses incurred in procuring the discharge of the attachment, and the restoration of the attached property, but not the costs and expenses incurred in the defense of the principal suit."

In *Johnson* v. *Farmers' Bank, supra,* the rule is stated in the first headnote thus:

"In an action on an attachment bond to recover expenditures in getting counsel, evidence, and for trouble, etc., all · these expenses having been incurred in defending the cause of action, the plaintiff was not entitled to recover anything."

. In *Northampton National Bank* v. *Wylie, supra,* the facts and circumstances were substantially as in the case at bar, except that no redelivery bond was given. The action in that case was commenced by attachment against a nonresident corporation, and no effort was made to discharge the property from the attachment. Upon the trial a judgment was given in favor of the defendant and an action upon the attachment bond followed. It was there contended, as it is here, that the whole defense was directed to the obtaining of relief from the attachment, and that the defendant was entitled to recover the counsel fees which it had paid in defending the action. While the court held a motion to discharge the attachment would have been unavailing, yet in the course of the opinion, in speaking of the nature of the bond, the court said:

"But its [the defendant's] resistance was wholly directed to defeat the action itself by establishing the result that the plaintiff in the suit had no legal claim against the bank arising out of the abstraction and loss of the bonds. The services of counsel rendered and bestowed in the litigation were for this end entirely. They were to support and maintain the position taken by the answer that the plaintiff under the law was exonerated from liability for the loss of the bonds. It is true that this resulted in vacating

the attachment, but not from any effort or attempt to set it aside, but because the action itself failed, by establishing the truth of the answer and exonerating the bank from legal liability. Under this state of the case, which is fully sustained by the proof, as well as by the findings of fact, it can in no legal sense be affirmed that any part of these counsel fees or other expenses was incurred by way of damages occasioned by the issuing and service of the attachment, and, so far as they have been included in the judgment recovered by the defendant, it was erroneous, and should be reversed and set aside."

It would be difficult indeed to find language or reasoning that would better fit the case at bar than the language we have quoted from the decision last referred to. We shall refer to this case again in connection with the cases cited by plaintiff's counsel.

In this connection it is only fair to plaintiff's counsel to state that they do not contend, not seriously at least, that where jurisdiction over the attachment defendant is obtained by the ordinary method of service of process upon him counsel fees for defending the action can be recovered as an element of damages. They, however, insist that when, as here, jurisdiction over the defendant is obtained solely by reason of the attachment a different rule applies, and in support of that contention they cite and rely upon the following cases in which it is so held: *Balinsky* v. *Gross,* 72 Misc. Rep. 7, 128 N. Y. Supp. 1062; *Tyng* v. *American, etc., Co.,* 69 App. Div. 137, 74 N. Y. Supp. 502; *Fixel* v. *Tallman* (Sup.) 116 N. Y. Supp. 639; *Wilson* v. *Root,* 43 Ind. 486; and *Whitney* v. *Brownewell,* 71 Iowa, 251, 32 N. W. 285. To the foregoing cases we desire to add the following: *Drake* v. *Sworts,* 24 Or. 198, 33 Pac. 563; *Moseley* v. *Fidelity & Deposit Co.* (Idaho) 189 Pac. 862; *Union Mill Co.* v. *Prenzler,* 100 Iowa, 540, 69 N. W. 876; *State* v. *Yount,* 186 Mo. App. 258, 172 S. W. 431; *Parish* v. *Van Arsdale,* 92 Kan. 286, 140 Pac. 835, Ann. Cas. 1916B, 981, followed in *Gregory* v. *United States, etc., Co.,* 105 Kan. 648, 185 Pac. 35, 1041; and *Crom* v. *Henderson* (Iowa) 175 N. W. 983.

In considering the effect of the foregoing decisions we shall first refer to the cases from Iowa. In citing those, both courts

and counsel frequently overlook the fact that they are based upon a special statute which has been in full force and effect in the state of Iowa since 1851. See Code of Iowa Anno. 1897, § 3887, which section reads:

"In an action on such bond, the plaintiff therein may recover, if he shows that the attachment was wrongfully sued out, and that there was no reasonable cause to believe the ground upon which the same was issued to be true, the actual damages sustained, and reasonable attorney's fees to be fixed by the court; and if it be shown such attachment was sued out maliciously, he may recover exemplary damages, nor need he wait until the principal suit is determined before suing on the bond."

The history of the enactment follows the section. It will be observed that the Iowa statute, in express terms, provides for "reasonable attorney's fees to be fixed by the court." Notwithstanding that section, the Supreme Court of Iowa, in the case of *Porter* v. *Knight, supra,* held the defendant in attachment, "where the writ is wrongfully sued out, is not entitled to recover attorney's fees in defending the whole case, but only the reasonable fee of his attorneys for their services in the auxiliary proceedings," the attachment proceedings. The foregoing doctrine is reaffirmed in the last decision emanating from the Supreme Court of Iowa in the case of *Crom* v. *Henderson,* (Iowa) 175 N. W. 983, decided in 1920, and not yet officially reported.

The case of *Whitney* v. *Brownewell, supra,* is based upon substantially the following facts: The action was originally commenced against three defendants, and an attachment was issued and levied upon a stock of merchandise. Two of the parties were made defendants upon the theory that they had purchased the stock of merchandise to defraud the plaintiff in said action. The other defendant, who was the sole debtor of the plaintiff in the action, made no defense in the original suit, and judgment was entered against him for the amount claimed. The defendants who had purchased the merchandise, however, defended the action to the extent of asserting their right to the merchandise, and obtained judgment to that effect. In an action on the attachment bond it was held that the two defendants aforesaid were entitled to recover counsel

fees for defending their rights to the property aforesaid. In view that it was claimed that the two defendants had obtained the merchandise wrongfully, which claim was successfully refuted, in effect there was nothing involved except the validity of the attachment, although the question was tried in the original attachment suit.

The only other Iowa case that requires attention is *Union Mill Co.* v. *Prenzler, supra*. In that case counsel fees were allowed. That case was, however, a most flagrant one. The jury in that case, in addition to awarding the attachment defendant actual damages, also awarded him $5,000 exemplary damages. It is therefore easy to understand why he was allowed counsel fees.

The Iowa cases are in a class by themselves and are not controlling upon the real question involved in the case at bar.

While the cases from Oregon and Kansas are not based upon a statute like that in force in Iowa, yet the decisions in those cases are based upon substantially the same doctrine upon which the Iowa cases rest.

This brings us to the case from Indiana and those from New York. In the later New York cases which we have cited in support of plaintiff's contention it is held that there is a difference between cases where the jurisdiction over the person or corporation is obtained by means of the attachment and those cases where such jurisdiction is obtained by the service of ordinary process. No good reason is advanced, and in our judgment none can be, why such a difference should exist. One can readily understand the theory upon which the Iowa cases are based, namely, that if the entire defense is made for the purpose of releasing the property from the attachment, as was the case in *Whitney* v. *Brownewell, supra,* counsel fees should be allowed precisely the same as though the attachment were assailed by motion and upon such motion were dissolved. The mere fact that personal jurisdiction was obtained by means of the attachment, however, cannot control. It must be conceded, however, that, although in the later New York cases the fact that jurisdiction over the corporation was obtained by means of an attachment is advanced

as a reason why counsel fees should be allowed, yet the decisions are mainly based upon the theory that the whole defense was for the purpose of releasing the property from the attachment, precisely as in the Iowa cases. If the latter theory is assumed as the basis of the later New York decisions, there can be no objection to those cases. In that connection we remark that, although the earlier New York case, in 4 N. Y. Supp., from which we have quoted, is, in our opinion, correctly decided, yet no mention of that case is made in the later New York cases. It is also true that the cases emanating from the different divisions of the New York Supreme Court are not in harmony, and that the New York Court of Appeals, the court of last resort, has never passed upon the question. That court, however, in the case of *Tyng* v. *American Surety Co.*, 174 N. Y. 166, 66 N. E. 668, expressly declined to pass upon the question as to whether attorney's fees might be allowed under the circumstances present in the New York cases. The New York decisions, therefore, still leave the question in doubt.

The Indiana case, namely, *Wilson* v. *Root*, is perhaps the leading case in which it is held that there is a distinction between those cases where jurisdiction over the person is acquired by means of an attachment and those wherein it is obtained by the service of ordinary process. In that case the following authorities are cited in support of the decision: Sedgwick on Damages, 453 (edition not stated); Drake on Attachments, § 175; *Morris* v. *Price*, 2 Blackf. (Ind.) 457; *Hoshaw* v. *Hoshaw*, 8 Blackf. (Ind.) 258; *Campbell* v. *Chamberlain*, 10 Iowa, 337; *Hayden* v. *Sample*, 10 Mo. 215, and *Seay* v. *Greenwood*, 21 Ala. 491. We have carefully examined every one of the foregoing cases, except that we have not had access to the edition of Sedgwick on Damages that is referred to in the Indiana decision. The author of that work, in volume 1 of the eighth edition (section 237) says:

"No recovery can be had for the general expenses of litigating the principal suit, even though the attachment for which it was given also gave the court jurisdiction and was wrongful."

In that section the author, however, cites the case of *Wilson*

v. *Root,* stating what it decides, but without comment.

In section 175 of Drake on Attachment, no such doctrine is stated. Upon the contrary, in the section following, namely, 176, the author lays down the rule that while counsel fees may be recovered for defending against the attachment, yet he adds, "* * * But no fees to counsel employed by the attachment defendant to defend the garnishee from liability, nor fees to counsel for services in the action on the bond." The case of *Wilson* v. *Root* is, however, also referred to by the author.

In *Morris* v. *Price,* 2 Blackf. (Ind.) 475, it is merely held that counsel fees can be recovered in defending against an attachment which was "wrongful and oppressive and without probable cause." Nothing is said about recovering counsel fees in defending the principal action.

In *Hoshaw* v. *Hoshaw,* 8 Blackf. (Ind.) 258, no such question was involved nor decided. The same is true with respect to *Campbell* v. *Chamberlain,* 10 Iowa, 337.

In *Hayden* v. *Sample,* 10 Mo. 215, it is held that—

"'Damages which may accrue to the defendant in consequence of the attachment' will extend to damages occasioned by any proceeding in that suit, and to costs and expenses attending the trial of a plea in abatement to the affidavit."

In Missouri the attachment may be assailed by what is called a plea in abatement, which is somewhat like the motion to dissolve the attachment under our practice, the difference being that on the plea in abatement a regular trial may be had in court. In the Missouri case, therefore, counsel fees were allowed for trying the plea in abatement, and not for defending the principal suit.

The case of *Seay* v. *Greenwood,* 21 Ala. 491, was a common-law "action on the case" to recover damages "for the wrongful and vexatious issuing out of sundry attachments." Attorney's fees were allowed for defending against the attachments. In that case the court, however, said "that it is not decided whether such expenses (attorney's fees) incurred in the action upon the tort itself are governed by the rule we have laid down." In later Alabama cases it is, how-

ever, squarely held, one of which we have hereinbefore cited, that attorney's fees are not recoverable for defending the principal action.

The foregoing very brief review of the authorities cited in support of the decision in the case of *Wilson* v. *Root*, in our judgment, makes it quite clear that they do not support the broad doctrine laid down in that case.

We do not wish to be understood as holding, or even as intimating, that in a case where the whole defense is directed against the attachment and to show that the same was wrongful, as was the case in *Whitney* v. *Brownewell, supra*, and in similar cases, attorney's fees may not be allowed, but what we contend for is that, where there is no motion assailing the attachment or no plea in abatement, as in Missouri, and a trial upon the issues presented by the pleadings results in favor of the defendant, then the rule which is applicable to all cases prevails, namely, that, unless there is a statute expressly authorizing the allowance of attorney's fees, none can be awarded by the court. We further contend that the case at bar comes squarely within the proposition last stated, and does not come within the rule laid down in the Iowa cases, which was the one adopted by the district court. In our judgment the case at bar falls squarely within the rule laid down in *Northampton National Bank* v. *Wylie*, 52 Hun, 146, 4 N. Y. Supp. 907, from which we have quoted. Assuming that in this case the defendants herein had brought the action in which the attachment was issued in the state of Missouri, the home of the plaintiff herein, and had there filed their complaint containing the very same allegations that were contained in the complaint in the district court of Weber county, and assuming that the plaintiff herein had filed its answer in that case, containing precisely the same allegations that it contained in the action commenced in Weber county, and assuming, further, that at the trial the plaintiffs herein had established the truth of the averments in its answer, and judgment had been entered in its favor, could it have recovered attorney's fees for defending the action in Missouri? No one, in our judgment, would so contend. The mere fact,

however, that the original action was commenced in Utah and jurisdiction over the plaintiff herein was obtained by means of the attachment, and because it was wrongful, it is contended that in defending the action attorney's fees may be recovered by the plaintiff herein. To so hold would be to make a distinction where there is no difference. Moreover, it would result in giving a foreign corporation a peculiar advantage over a domestic corporation and over every citizen of the state. In view that jurisdiction could only be acquired over a foreign corporation (which has not complied with our Constitution and laws respecting service of process, etc.) by means of attachment, every foreign corporation which succeeded in defeating an action commenced against it would be entitled to recover attorney's fees, while all domestic corporations and other citizens over whom jurisdiction was obtained in the ordinary way could not do so although their property had been attached precisely as was that of the foreign corporation. The question, therefore, of whether the expenses incurred for the services rendered by counsel in defending an action can be recovered would depend on where and how the action was commenced, and not on whether such services were in fact rendered in having the property, wrongfully attached, released from such attachment. True it is that in case it is determined on the trial that the plaintiff in the action on whose initiative the attachment was issued had no cause of action against the defendant, the attachment was wrongfully issued. That would be true, however, in every case where the defendant finally succeeds in an action, and where no motion was or could have been successfully interposed to dissolve the attachment.

The law has wisely provided for the recovery of costs in every case in favor of the winning party, but it does not allow attorney's fees in addition to the ordinary statutory costs, except in such cases where the property of the defendant is unnecessarily and unlawfully interfered with, and then attorney's 'fees are allowed only for the purpose of having the property released from such wrongful interference and to have the same returned to the owner. It seems needless to

add that in the case at bar the plaintiff herein defended against the cause of action sued on, and the fact that it defeated the action is no more reason for allowing counsel fees in this case than in any other, where the plaintiff fails to establish a cause of action. Moreover, if a plaintiff is actuated by malice and acts without probable or any cause in bringing an action, and is guilty of oppression in suing out an attachment, any one may obtain relief in a proper proceeding against such malice and oppression, and may recover, not only his actual damages, but may recover exemplary damages as well. *Cahoon* v. *Hoggan,* 31 Utah, 74, 86 Pac. 763. There is, therefore, no reason why courts should depart from the salutary rule which authorizes the allowance of costs and expenses that are provided by the usual so-called cost statutes. In addition to that, no costs should be allowed except when expressly authorized by statute. The courts of this state are always open to all for the redress of grievances and the protection of legal rights, and in our judgment they should refrain from allowing the imposition of costs and expenses upon the losing party except such as are provided for by statute and such as by the concensus of the opinions of the courts by long and uniform usage have been allowed in certain cases as necessary for the protection of legal rights. In our judgment such is not the case here.

That the district court did not err in allowing legal interest is settled in this jurisdiction. *Fell* v. *Union Pac. Ry. Co.,* 32 Utah, 101, 88 Pac. 1003, 28 L. R. A. (N. S.) 1, 13 Ann. Cas. 1137, and cases following that decision.

We desire to add that we do not wish to be understood as holding, and we do not hold, that if a defendant in any case has been required to pay attorney's fees or other costs in having the attached property released from the attachment he may not recover reasonable attorney's fees and costs which have been incurred in having the property released, although no attempt was made, as was the case here, to have the attachment dissolved. In this case, however, the court allowed the amount of premium for the redelivery bond, and also al-

lowed the increased costs for feeding the mules that were attached. There were no other costs or expenses, as appears from the following finding:

"That the St. Joseph Stock Yards Company suffered no other damages by reason of said attachment than the items specifically found herein; that the total amount of damages sustained by the said St. Joseph Stock Yards by reason of said writ of attachment is the sum of $1,381.35, itemized as above stated."

Here we have a finding, both affirmatively and negatively stated, that there were no other costs except those mentioned by the court. This finding is not assailed by the plaintiff, and hence must be assumed to be correct. If it be correct, then the court allowed all that could legally be awarded to the plaintiff in the several items amounting in the aggregate to the sum of $291.35.

From what has been said it follows that the district court erred in entering judgment in favor of the plaintiff for the $1,100 attorney's fees for defending the action in which the attachment was issued. The judgment, to that extent only, is therefore reversed, and the cause is remanded to the district court of Weber county, with directions to set aside the conclusion of law awarding the plaintiff herein $1,100 attorney's fees, and after doing so to enter judgment in favor of plaintiff for the other items of costs and expenses, amounting to the sum of $291.35, with legal interest on said sum from the date stated in the judgment. In view of the peculiar circumstances of this case, and for the reason that the judgment is affirmed in part and reversed in part, neither party is awarded costs on this appeal.

CORFMAN, C. J., and WEBER, GIDEON, and THURMAN, JJ., concur.