Clyde HUTCHESON, Plaintiff and Appellant,

v.

Larry GLEAVE, Patricia Gleave, Deloy Shaw and Helen Shaw, Defendants and Respondents.

No. 16944.

Supreme Court of Utah.

June 17, 1981.

---

14. Recently this Court had occasion to analyze the relationship between the No-Fault Act and the Safety Responsibility Act in *Allstate Insurance Co. v. U. S. Fidelity and Guaranty Co.*, Utah, 619 P.2d 329 (1980).

15. It is unclear why the provisions of the Indemnification Act are inapplicable here.

Tex R. Olsen, Richfield, for plaintiff and appellant.

K. L. McIff, Richfield, for defendants and respondents.

HALL, Justice:

Plaintiff, as purchaser, brought this action seeking rescission of a contract to purchase the "Elbow Ranch," situated in Piute County, Utah, and to recover the sum of $40,000 paid toward the purchase price.

The trial court, sitting without a jury, determined that plaintiff was the breaching party, he having failed to comply with the payment provisions of the contract. Thereupon, the court dismissed plaintiff's complaint and awarded defendants the $40,000 paid toward the purchase price as liquidated and agreed damage, as was specifically provided for in the contract.

Plaintiff raises a single point on appeal. He challenges the propriety of the award of $40,000 as damage, contending that such constitutes an unconscionable forfeiture.

When an attack is made upon the findings and judgment of the trial court, the applicable rule of appellate review is as was stated in *Charlton v. Hackett*:[1]

In considering the attack on the findings and judgment of the trial court it is

1. 11 Utah 2d 389, 360 P.2d 176 (1961).

our duty to follow these cardinal rules of review: to indulge them a presumption of validity and correctness; to require the appellant to sustain the burden of showing error; to review the record in the light most favorable to them; and not to disturb them if they find substantial support in the evidence.

Applying the foregoing rule of review, substantial support is found in the record to support the judgment of the trial court.

The contract executed by the parties consisted of an earnest money agreement dated December 6, 1977. Plaintiff failed to make the first two payments due thereunder. Consequently, on February 28, 1978, the parties agreed upon a new payment schedule and amended the contract accordingly. By the terms of the contract, as amended, plaintiff agreed to purchase the ranch for the sum of $962,500, payable in installments as follows: $10,000 as a deposit; $20,000 on March 6, 1978; $10,000 on March 20, 1978: $60,000 at closing on April 10, 1978; and various installments thereafter, together with interest at 8½ percent per annum until paid in full. In the event of non-payment or failure to complete the purchase, defendants had the option to retain all sums theretofore paid as liquidated and agreed damage. Plaintiff was entitled to possession on March 15, 1978, and he was to assume defendants' obligation on an existing lease of sprinkling equipment previously installed on the ranch.

Plaintiff paid each of the pre-closing installments totaling $40,000. However, when the parties met for the closing on April 10, 1978, plaintiff was admittedly without funds to pay the sum of $60,000 due that day. He requested and received an additional ten days to raise the sum due on closing. He assured defendants that he would take possession and plant the 1978 crops, and defendants assisted him in locating the necessary seed and farming machinery.

Plaintiff planted no crops and made no further contract payments. By June 1, his payment delinquency had reached $110,000 and defendants telephoned plaintiff's attorney with a request for a "cut-off" date for performance. The attorney proposed the date of June 15, which defendants accepted. Defendants recited their agreement in a follow-up letter to the attorney and suggested that plaintiff be informed as to his potential loss should he again fail to perform.

The performance date of June 15 passed without payment, and plaintiff did not otherwise contact defendants. In July, defendants notified plaintiff that the contract was terminated, but that they were willing to negotiate a new sale if he could fund the purchase. They also advised of a potential sale to another. Finally, on August 17, having had no further contact from plaintiff, defendants did in fact sell the major water rights of the ranch to another.

The evidence adduced by defendants specifically addressed the damage issue. They offered testimony that their ranch had been tied up by plaintiff for more than six months and that they had sustained a crop loss of $56,100 during the 1978 growing year by reason of the fact that no crops were planted.

It has long been the law that when contracting parties stipulate the amount of damage that shall be paid in the event of breach of contract, such stipulation is generally enforceable, so long as the stipulated amount is not disproportionate to the damage actually sustained.[2] However, when the enforcement of the forfeiture provision would allow an unconscionable and exorbitant recovery, bearing no reasonable relationship to the actual damage suffered, it becomes unenforceable.[3]

In the instant case, the trial court acted well within its prerogative as factfinder in determining the reasonableness of the sum of $40,000 awarded as liquidated and agreed damage. This is reflected in

2. *Forrester v. Cook*, 77 Utah 137, 292 P. 206 (1930).

3. *Perkins v. Spencer*, 121 Utah 468, 243 P.2d 446 (1952).

**818**

the court's findings wherein it was specifically found: 1) that defendants' crop loss was at least commensurate with the award; 2) that plaintiff had tied up defendants' ranch for more than six months; and 3) that the award was not disproportionate to the $962,500 contract price.

Affirmed. Costs to defendants.

MAUGHAN, C. J., and STEWART, HOWE and OAKS, JJ., concur.