FIRST SECURITY BANK OF UTAH,
N.A., Plaintiff and Respondent,

v.

J.B.J. FEEDYARDS, INC., a corporation,
et al., Defendants,

Don Allen, dba Mt. Nebo Cattle Compa-
ny, Intervenor and Appellant,

FIRST SECURITY BANK OF UTAH,
N.A., Plaintiff and Appellant,

v.

J.B.J. FEEDYARDS, INC., a corporation,
et al., Defendants,

Don Allen, dba Mt. Nebo Cattle Compa-
ny, Intervenor and Respondent.

Nos. 17269, 17270.

Supreme Court of Utah.

July 20, 1982.

Thomas S. Taylor of Christensen, Taylor & Moody, Provo, for Don Allen and defendants.

Don B. Allen, Patrick B. Nolan of Ray, Quinney & Nebeker, Salt Lake City, for First Sec. Bank of Utah.

HALL, Chief Justice:

Plaintiff First Security Bank of Utah and intervenor Allen separately appeal a decision awarding damages to intervenor for plaintiff's wrongful attachment of 266 head of cattle owned by intervenor.

On February 7, 1973, plaintiff filed suit against defendant J.B.J. Feedyards to recover money owed to it by J.B.J. On the same day, pursuant to a writ of attachment, plaintiff attached 342 cattle kept in the J.B.J. Feedyard, some of which belonged to J.B.J. itself and some of which were later found to belong to Allen. On February 9, 1973, Allen intervened in the action, filing a motion to quash plaintiff's writ of attachment, which motion was granted on April 6, 1973. Meanwhile, the parties had stipulated that the attached cattle would be sold at the highest possible price and the proceeds held by plaintiff in a special account pending determination of ownership.

On March 9, 1973, Zions First National Bank, holder of a security interest in intervenor's cattle, filed a separate action against plaintiff, asserting intervenor's ownership of and Zion's own first lien on the attached cattle. In that action, the trial court determined that 266 of the attached cattle had belonged to intervenor and that

he should receive $114,459.07 of the sales proceeds. Although the trial court entered judgment on June 4, 1974, intervenor received only $40,467.08 at that time; plaintiff continued to hold most of the sales proceeds while it appealed that judgment. On April 15, 1975, this Court affirmed the trial court's decision.[1] Plaintiff paid to intervenor the remainder of the $114,459.07 in sales proceeds (less $12,873.79 feed costs), along with court costs and interest from the date of judgment.

In the suit originally filed by plaintiff against defendants, plaintiff and defendants eventually resolved by stipulation all issues between them and the decision of the trial court concerned only a claim for damages raised by intervenor against plaintiff. In that decision, the court found that at the time of the attachment, plaintiff had actual and constructive notice of intervenor's ownership of the 266 cattle, that it attached the cattle without probable cause and that its actions showed malice. The court awarded to intervenor damages for loss of use of the $114,459.07 and attorney fees incurred in quashing plaintiff's writ of attachment. That award resulted in the present appeal.

Plaintiff appeals on the grounds that it did have probable cause to attach intervenor's cattle and that intervenor has failed to show any specific items of damage. In turn, intervenor claims that the damages awarded are insufficient and that the trial court erred in refusing to grant three additional items of damage claimed by him at trial. We consider first the alleged wrongfulness of plaintiff's attachment and second whether sufficient evidence supports the specific damages awards made by the trial court.

I

■ Plaintiff claims that intervenor has failed to establish malice or lack of probable cause in its actions and that in the absence of such a showing, no damages can be awarded. However, substantial evidence supports the trial court's findings that plaintiff had notice of intervenor's owner-ship of the cattle and that it lacked probable cause to attach them. At the time of attachment, intervenor's cattle were branded with the symbol "V–5," a brand registered with the Utah Department of Agriculture by intervenor's business, Mount Nebo Cattle Company. A financing statement filed by Zions First National Bank with the Utah Secretary of State also showed the brand "V–5" as belonging to Mount Nebo Cattle Company. Plaintiff admits that it did not check either of these public records to determine ownership of the "V–5" brand.

Plaintiff claims that knowledge of Mount Nebo's ownership of the brand would not have affected its decision to attach the "V–5" branded cattle because it did not know that the Mount Nebo Cattle Company was associated with intervenor. Testimony by William Barth Boswell, an agent of J.B.J., contradicts this assertion. Boswell testified that shortly before the attachment, he told plaintiff's officer Roy Broadbent that the cattle belonged to intervenor and that plaintiff had no claim on them. According to Boswell, he also "continually" informed other representatives of plaintiff of the independent ownership of the Mount Nebo Cattle Company cattle.

Broadbent testified that he did not recall the conversation reported by Boswell and that at the time of attachment, he believed J.B.J. to be the owner of the "V–5" branded cattle. However, the trial court found that the "V–5" branded animals were "never directly associated with the cattle in which the First Security Bank held a secured interest." Even if plaintiff did believe that the cattle belonged to J.B.J., it had a duty to verify this assumption by checking public records and making inquiries before taking the cattle into its possession. Plaintiff has introduced no evidence of any such efforts on its part to verify ownership. In the absence of such evidence, the trial court correctly found that plaintiff acted without probable cause.

1. *Zions First National Bank v. First Security* *Bank of Utah, N.A.*, Utah, 534 P.2d 900 (1975).

In addition to lack of probable cause, the trial court found legal and actual malice in plaintiff's actions, providing the basis for awards of punitive damages and mental anguish damages to intervenor. The court found that the total value of the assets attached by plaintiff was approximately five times the amount of J.B.J.'s debt. It found that even after intervenor asserted his ownership and demanded return of the cattle, plaintiff unlawfully retained the cattle and handled them in such a way as to fail to mitigate damages. Regarding plaintiff's purpose in carrying out the attachment, the court found as follows:

> [A]t the time of the attachment First Security Bank knew that there was a substantial probability that the owner of the [cattle] was not J.B.J. Feedyards, Inc., its [debtor], and intentionally chose to disregard that possibility in order to enhance the position of FIRST SECURITY BANK. . . .

These findings, together with those concerning probable cause, led to the court's determination that plaintiff "with actual malice . . . unlawfully converted and used intervenors' assets." The record, when viewed in the light most favorable to intervenor, contains substantial evidence to support the court's findings and we will not disturb them.[2]

## II

Having determined that plaintiff acted with actual malice and without probable cause, the trial court awarded the following damages to intervenor: 1) excessive interest paid to Zions First National Bank as a result of intervenor's inability to repay a loan, 2) lost profits in intervenor's Montana livestock trade, 3) attorney fees, 4) damages for mental anguish, 5) punitive damages, and 6) prejudgment interest. The court refused to award three additional items of damages sought by intervenor: 1) loss on the sale of the attached cattle, 2) loss on the forced sale of intervenor's Central Montana Livestock Company, and 3) lost profits in the cattle futures market.

■ As to each of the latter three items of claimed damages, the evidence presented by intervenor clearly fell short of establishing either the fact of damages or the causal connection between alleged damages and the actions of plaintiff. We affirm the trial court's finding that intervenor failed to carry his burden of proof on these three items.

The six items of damages which the trial court did allow are discussed individually below.

A. Excessive Interest Paid to Zions First National Bank

■ The trial court found that because of the two-year delay in delivery of the cattle sales proceeds to intervenor, he was unable to repay a $50,000 loan from Zions First National Bank which fell due four months after the attachment. The court awarded $14,506.56 in damages to reimburse intervenor for interest incurred on the loan between July 2, 1973, the due date of the loan, and May 16, 1975, the date when intervenor received the sales proceeds. Plaintiff challenges this award on the ground that intervenor failed to show that he would have repaid the loan on time if the attachment had not occurred. However, intervenor's testimony provided evidence from which the trial court could have reached this conclusion. Intervenor and his wife both testified that they had invested most of their working capital in the cattle attached by plaintiff and that the unavailability of this capital made it difficult for them to meet their financial obligations. Intervenor also testified that they used most of their available funds during the period of attachment to pay debts owed to Montana institutions and that they were unable to borrow additional funds with which to pay Zions. The trial court properly awarded damages for the extra interest payments necessitated by plaintiff's delay in returning intervenor's money.

---

**2.** *Litho Sales, Inc. v. Cutrubus,* Utah, 636 P.2d 487 (1981); *Hutcheson v. Gleave,* Utah, 632 P.2d 815 (1981).

However, in awarding the entire amount of excessive interest claimed by intervenor, the trial court partially duplicated an interest payment which they had already received from plaintiff. The Satisfaction of Judgment issued in the case which determined intervenor's ownership of the cattle (which constitutes part of the record before us) shows that on May 16, 1975, when Zions received its share of the $114,459.07 judgment money, plaintiff paid interest on that judgment to cover the period which had elapsed since the judgment date, June 4, 1974. This payment compensated intervenor for the interest paid to Zions during the second year of the two-year period during which the loan was overdue. The amount of interest incurred on the loan during the first of those two years, from July 2, 1973, to June 4, 1974, was $6,179.43, as shown by both the Satisfaction of Judgment and the Judgment itself (also part of the record). This figure represents the portion of excess interest for which intervenor has not yet been compensated. We therefore modify the judgment to reduce intervenor's excess interest award to $6,179.43.

B. Lost Profits in Montana Livestock Trade

Intervenor claims that the loss of the use of the cattle sales proceeds during the years 1973–1975 not only prevented him from repaying his Zions loan when due but also deprived him of profits which he otherwise would have earned in the Montana livestock trading business. Intervenor introduced evidence to show that he sold a total of 46,500 head of livestock during 1972 and that livestock sales decreased during each of the subsequent three years to a total of only 14,854 head in 1975. Intervenor claimed that this decrease in volume resulted from lack of investment capital caused by the unavailability of the Utah cattle sales proceeds.

Intervenor presented expert testimony purporting to project the profits which his livestock business would have produced if he had sold the same number of livestock in each of the years 1973, 1974 and 1975 as

they had sold during 1972. On the basis of this testimony, intervenor claimed damages for lost profits from plaintiff, alleging that if plaintiff had not deprived him of the use of his Utah cattle proceeds, intervenor would have maintained a constant volume of livestock sales.

▪ Intervenor has failed to establish his right to recover damages for lost profits for several reasons. First, he has presented no evidence showing that his livestock profits actually decreased during the years in question. The only documents in evidence which pertain to intervenor's financial status during those years consist of a series of annual reports allegedly submitted by intervenor to the Packers and Stockyards Administration of the Department of Agriculture. These reports contain only selected information and do not convey a complete picture of intervenor's livestock transactions during those years. Intervenor's testimony added nothing to these documents and intervenor did not make any sort of estimate concerning actual profits or losses during this period.

Intervenor also failed to present any evidence indicating that he would have invested the Utah cattle proceeds in additional livestock if such proceeds had been available. Intervenor showed no custom or practice in his business of investing all available capital in livestock during the years preceding the attachment. On the contrary, intervenor's Department of Agriculture reports show an inverse correlation between owner's capital and volume of livestock traded. According to those reports, intervenor's net owner's capital increased during each of the three years for which intervenor claims lost profits even as livestock sales decreased. The reports also show that at the end of each of the three years, intervenor had on hand a quantity of livestock either roughly equal to or greater than that which had been sold during that year. It is clear from these reports that the number of livestock sold during the relevant years did not depend on the total number of livestock acquired during that year or on the total amount of capital available to intervenor.

Intervenor has also failed to show the percentage rate of return which he might have anticipated from investment of additional funds in his livestock business. None of intervenor's evidence relates the amount of claimed lost profits in any way to the specific dollar amount which he allegedly would have invested if the attachment had not occurred. Instead, intervenor's entire claim to damages in this area depends on his assertion that the actual number of livestock sold would have remained constant in the absence of interference by plaintiff. Although intervenor testified that livestock sales increased each year from 1955 to 1972, no documentary evidence was presented to that effect. Even the limited information provided by intervenor's Department of Agriculture reports pertains only to the years from 1972 to 1975. Nor did intervenor's expert engage in any analysis of his previous business operations in order to evaluate the likelihood that the business would have maintained a constant sales volume during those years. Thus, intervenor's entire claim of lost profits rests on an assumption unsupported by the record. Even if the trial court assumed that intervenor would have invested all of his Utah cattle proceeds (less fees costs and $50,000 loan money) in livestock, it had no evidence from which to estimate the profits which such an investment would have produced without accepting intervenor's unsubstantiated premise of constant sales volume.

Furthermore, even assuming that the amount of intervenor's Utah cattle proceeds was exactly the amount needed to enable him to trade the same number of livestock during each of the years from 1973 to 1975 as in 1972, the trial court had no basis on which to calculate the net profit per head of livestock. Intervenor used in his calculations of damages the profit figure of $8 per head, but this figure was revealed on cross-examination to be a gross figure from which intervenor had deducted no expenses. The trial court recognized the inaccuracy of the $8 figure, awarding intervenor instead a $1.50 net profit for each animal which intervenor claimed he would have sold from 1973 to 1975 if the attachment had not taken place. No evidence in the record supports the $1.50 figure or any other net profit figure; intervenor himself, when questioned by counsel for plaintiff, could give no estimate of what might constitute a reasonable net profit per head of livestock sold.

Finally, the difficulty of speculating as to profits which intervenor might have realized during the two-year period in question is increased by the fact that intervenor's business apparently suffered financial setbacks as the result of factors unrelated to plaintiff's actions. Intervenor, his wife and his expert witness all admitted that circumstances apart from the attachment had affected the business negatively between 1973 and 1975. Such circumstances included heavy operating expenses, large debts incurred prior to the attachment date and financial losses suffered in an unspecified business transaction in Montana.

The wholly speculative character of intervenor's evidence on the issue of lost profits invalidates any attempt to award damages in this area. This Court summarized the law relating to lost profits damages in *Howarth v. Ostergaard,* 30 Utah 2d 183, 515 P.2d 442 (1973), as follows:

> The basic and general rule is that loss of anticipated profits of a business venture involve so many factors of uncertainty that ordinarily profits to be realized in the future are too speculative to base an award of damages thereon. The other side of the coin is that damages to a business or enterprise need only be proved with sufficient certainty that reasonable minds might believe from a preponderance of the evidence that the damages were actually suffered. [Footnotes omitted.]

Intervenor has not shown with any degree of certainty the fact of lost profits, causation of such lost profits by plaintiff or the amount of such lost profits. In the absence of the "sufficient certainty" required by *Howarth v. Ostergaard* and other Utah

cases,[3] this Court can discover no basis on which to permit recovery of alleged lost profits by intervenor.

C. Attorney Fees

 On the issue of attorney fees, intervenor offered an exhibit purporting to show the time spent by intervenor's attorney on legal work in the two cases arising from plaintiff's wrongful attachment from February 8, 1973, the day after the attachment, to the time of the trial on damages. The exhibit consists of a list of itemized entries showing work performed and time spent on each applicable calendar date and representing a total of 860.75 hours. Intervenor's attorney supplemented this list by testifying as to the reasonable value of his services. He valued such services at the rate of $100 per hour for trial-related work and $75 per hour for other work and arrived at a total of $77,420.46 (including $1,489.21 costs). However, he did not clearly relate this total to any of the information contained in the itemized exhibit. He also attempted to explain the breakdown of this total between services relating to the attachment itself and those relating to intervenor's damages claims; however, no decipherable information emerges from his testimony on this subject.

The trial court determined that plaintiff was liable to intervenor for attorney fees incurred in defending against the wrongful attachment itself but not in litigating intervenor's subsequent damages claims. The court awarded intervenor $10,000 in attorney fees, finding that this amount appropriately compensated him for attorney fees in the former category.

Intervenor claims that the trial court should have awarded him damages for the entire amount of attorney fees incurred as of the time of trial on the damages issue. However, he has cited no case law which would support recovery of any attorney fees other than those related to actual defense against the attachment. In *St. Jo-*

seph Stock Yards Co. v. Love, 57 Utah 450, 195 P. 305 (1921), this Court held:

[In] cases where the property of the defendant is unnecessarily and unlawfully interfered with, ... attorney's fees are allowed only for the purpose of having the property released from such wrongful interference and to have the same returned to the owner.

In addition to this specific pronouncement, the Court quoted a well-known general rule concerning attorney fee awards:

The courts of this state ... should refrain from allowing the imposition of costs and expenses upon the losing party except such as are provided for by statute and such as by the concensus of the opinions of the courts by long and uniform usage have been allowed in certain cases as necessary for the protection of legal rights.

Under the above rule, intervenor has no right to attorney fees beyond those awarded by the trial court.

Plaintiff contends that because of intervenor's failure to designate clearly what portion of his claimed attorney fees represented defense against the wrongful attachment itself and what portion represented litigation of the resulting damages claims, intervenor should receive no award for services in either area. Although it is true that intervenor's evidence was ambiguous on this point, the trial court possessed some information concerning the breakdown of claimed attorney fees in the itemized exhibit presented by intervenor. This information, combined with the testimony of intervenor's attorney, provides a sufficient evidentiary basis for the attorney fee awarded by the trial court.

D. Mental Anguish Damages

Intervenor and his wife both testified that the unavailability of the funds held by plaintiff caused them anxiety, frustration

**3.** *Monter v. Kratzers Specialty Bread,* 29 Utah 2d 18, 504 P.2d 40 (1972); *DeVries v. Starr,* 393 F.2d 9 (10th Cir.1968); *Gould v. Mountain States Telephone & Telegraph Co.,* 6 Utah 2d 187, 309 P.2d 802 (1957); *United States v. Griffith, Gornall & Carman, Inc.,* 210 F.2d 11 (10th Cir.1954).

and embarrassment, prompting an award of $25,000 in mental anguish damages by the trial court. Plaintiff contests this award, arguing that in order to award damages for mental anguish, a court must find actual malice or ill will on the part of the responsible party and that intervenor has demonstrated no such element in this case. Plaintiff's argument is undermined by the fact that the trial court expressly found actual malice on plaintiff's part. As discussed in the first section of this opinion, the record contained support for this finding, thus providing the basis for an award of reasonable damages for mental anguish.

 As to the amount of such damages, however, we can find no justification for the relatively large sum awarded to intervenor. Damages for mental anguish are an extreme remedy, which should be dispensed with caution.[4] In none of the cases cited by the parties have mental anguish awards even approached the $25,000 awarded here.[5] Although intervenor undoubtedly suffered emotionally as the result of plaintiff's wrongful actions, he alleged no permanent damage nor any other circumstance which might justify the extraordinarily large amount awarded by the court below. While the finder of fact has wide latitude in determining damages, this Court has authority to reduce the amount of the trial court's award where "all reasonable minds would conclude [that] the limits have been exceeded." *Duffy v. Union Pacific Railroad Co.*, 118 Utah 82, 218 P.2d 1080 (1950).[6] Accordingly, we direct the trial court to modify its judgment to provide for

an award of mental anguish damages in the amount of $12,500.

### E. Punitive Damages

The trial court awarded punitive damages of $100,000 to intervenor, in opposition to which plaintiff again advances the argument of absence of malice on its part. As with the trial court's award of mental anguish damages, this punitive damages award finds justification in the evidence presented by intervenor on the issue of malice. However, the amount of punitive damages awarded, like that of mental anguish damages, substantially exceeds that which the evidence can sustain.

 Punitive damages constitute "an extraordinary remedy . . . outside the field of usual redressful remedies" which "should be applied with caution lest, engendered by passion or prejudice because of defendant's wrongdoing, the award becomes unrealistic or unreasonable."[7] Such damages may be awarded "where the nature of the wrong complained of and the injury inflicted goes beyond merely violating the rights of another in that it is found to be willful and malicious."[8] In determining the amount of such damages, the fact finder should consider the following factors: the nature of the alleged misconduct of the defendant,[9] the extent of the effect of the misconduct on the lives of the plaintiff and others,[10] the probability of future recurrence of such misconduct,[11] the relationship between the

---

4. *United States v. Hatahley,* 257 F.2d 920 (10th Cir.1958); *Jeppsen v. Jensen,* 47 Utah 536, 155 P. 429 (1916).

5. This Court has authority to consider the amounts of damages awarded in previous cases as bearing upon the issue of whether passion or prejudice influenced the finder of fact. *See Evans v. Gaisford,* 122 Utah 156, 247 P.2d 431 (1952); *Bankers Life & Casualty Co. v. Kirtley,* 307 F.2d 418 (8th Cir.1962).

6. *See also* cases cited at note 17, *infra.*

7. *Kesler v. Rogers,* Utah, 542 P.2d 354 (1975).

8. *Elkington v. Foust,* Utah, 618 P.2d 37 (1980); *Kesler v. Rogers, supra,* note 7; *Prince v. Peterson,* Utah, 538 P.2d 1325 (1975).

9. *Elkington v. Foust, supra,* note 8; *Terry v. Zions Cooperative Mercantile Institution,* Utah, 605 P.2d 314 (1979); *Kesler v. Rogers, supra,* note 7; *Monter v. Kratzers Specialty Bread, supra,* note 3.

10. *Elkington v. Foust, supra,* note 8; *Kesler v. Rogers, supra,* note 7; *Ostertag v. LaMont,* 9 Utah 2d 130, 339 P.2d 1022 (1959); *Falkenberg v. Neff,* 72 Utah 258, 269 P. 1008 (1928).

11. *Terry v. Zions Cooperative Mercantile Institution, supra,* note 9.

parties,[12] the relative wealth of the defendant,[13] the facts and circumstances surrounding the misconduct[14] and the amount of actual damages awarded.[15]

■ In reviewing the amount of a punitive damages award, this Court ordinarily defers to the discretion of the fact finder. However, where it appears that such an award has resulted from passion or prejudice rather than from reason and justice, this Court must not permit it to stand.[16] In the absence of evidence in the trial record evincing such passion or prejudice, such may be shown by the excessive amount of the punitive damages award itself. This Court has stated:

> [W]hen [an exemplary damages award] is so flagrantly excessive and unjust as to indicate a disregard of the rules of law by which damages are regulated, it is then subject to review and correction as a matter of law.

*Falkenberg v. Neff,* 72 Utah 258, 269 P. 1008 (1928). In *Terry v. Zions Cooperative Mercantile Institution,* Utah, 605 P.2d 314 (1979), we observed with respect to punitive damages:

> The measure of the verdict might be so grossly excessive and disproportionate to the injury that this court would say, from that fact alone, that as a matter of law the verdict must have been arrived at by passion or prejudice. However, to support that conclusion, the verdict must be so excessive as to be shocking to one's conscience and to clearly indicate passion, prejudice or corruption on the part of the jury.

In such cases, this Court may order a new trial on the issue of damages or, in the alternative, remission of a portion of the punitive damages by the plaintiff.[17]

■ In this case, the finding of actual malice upon which the lower court based its punitive damages award was not derived from direct evidence concerning the state of mind of plaintiff's officers, but rather was inferred from plaintiff's wrongful actions. Such evidence, while sufficient to sustain the finding of the trial court, does not show a vindictiveness or ill will so extreme as to warrant the vast sum awarded here, which is many times greater than the punitive damages awards in any of the cases cited by intervenor. The trial court's award of $100,000, considered in light of the actual harm suffered by intervenor, the degree of malice shown by plaintiff and the other factors listed above, appears to this Court so excessive as to indicate that it was "arrived at by passion or prejudice" in violation of the above-quoted standards. Under these circumstances, this Court must reduce the award to an amount which the evidence, viewed most favorably to intervenor, can justify. We direct the trial court to modify its judgment to provide for a punitive damages award of $50,000.

### F. Prejudgment Interest

■ The trial court awarded prejudgment interest on all items of damage from

**12.** *Ostertag v. LaMont, supra,* note 10.

**13.** *Terry v. Zions Cooperative Mercantile Institution, supra,* note 9; *Wilson v. Oldroyd,* 1 Utah 2d 362, 267 P.2d 759 (1954).

**14.** *Elkington v. Foust, supra,* note 8; *Terry v. Zions Cooperative Mercantile Institution, supra,* note 9; *Wilson v. Oldroyd, supra,* note 13; *Ostertag v. LaMont, supra,* note 10.

**15.** *Terry v. Zions Cooperative Mercantile Institution, supra,* note 9; *Kesler v. Rogers, supra,* note 7; *Prince v. Peterson, supra,* note 8; *Monter v. Kratzers Specialty Bread, supra,* note 3; *Ostertag v. LaMont, supra,* note 10; *Falkenberg v. Neff, supra,* note 10.

**16.** *Elkington v. Foust, supra,* note 8; *Terry v. Zions Cooperative Mercantile Institution, su-* pra, note 9; *Ostertag v. LaMont, supra,* note 10; *Wilson v. Oldroyd, supra,* note 13; *Duffy v. Union Pacific Railroad,* 118 Utah 82, 218 P.2d 1080 (1950); *Pauly v. McCarthy,* 109 Utah 431, 184 P.2d 123 (1947); *Falkenberg v. Neff, supra,* note 10; *Jensen v. Denver & Rio Grande Railroad Co.,* 44 Utah 100, 138 P. 1185 (1914).

**17.** *Kesler v. Rogers, supra,* note 7; *Prince v. Peterson, supra,* note 8; *Monter v. Kratzers Specialty Bread, supra,* note 3; *Wilson v. Oldroyd, supra,* note 13; *Duffy v. Union Pacific Railroad Co., supra,* note 16; *Pauly v. McCarthy, supra,* note 16; *Falkenberg v. Neff, supra,* note 10; *Shepard v. Payne,* 60 Utah 140, 206 P. 1098 (1922); *Jensen v. Denver & Rio Grande Railroad Co., supra,* note 16.

May 16, 1975, the date when intervenor acquired the cattle sales proceeds, to July 26, 1980, the date of its judgment. The court properly granted such interest at the rate of 6 percent per annum on its award of excessive interest paid to Zions and on its attorney fee award, both of which were fixed as of the time of claimed damages. As to the awards for mental anguish and punitive damages, however, prejudgment interest is inappropriate under the rule set forth in *Bjork v. April Industries, Inc.,* Utah, 560 P.2d 315 (1977). This Court stated in that case:

> [T]he law in Utah is clear[:] ... where the damage is complete and the amount of the loss is fixed as of a particular time, and that loss can be measured by facts and figures, interest should be allowed from that time and not from the date of judgment. On the other hand, *where damages are incomplete or cannot be calculated with mathematical accuracy,* such as in the case of personal injury, wrongful death, defamation of character, false imprisonment, etc., the amount of the damage must be ascertained and assessed by the trier of the fact at the trial, and in such cases *prejudgment interest is not allowed.* [Emphasis added; footnote omitted.]

This rule clearly precludes prejudgment interest on the court's mental anguish and punitive damages awards, which were not fixed or ascertainable before the time of trial.

In addition to prejudgment interest on damages, the trial court granted to intervenor interest on the cattle sales proceeds themselves from February 7, 1973, to June 4, 1974. (Interest incurred on the sales proceeds after June 4, 1974, was paid to intervenor following affirmance of their judgment of ownership, as shown by the May 16, 1975 Satisfaction of Judgment.) We affirm the trial court's award as to the portion of the $101,585.28 ($114,459.07 less $12,873.79 feed costs) which would have remained available for intervenor's use after payment of his $50,000 Zions loan. Interest on this amount should cover the eleven-month period from July 2, 1973, the date

when intervenor originally expected to have earned sufficient money from cattle sales to repay the Zions loan, to June 4, 1974. Calculated at a rate of 6 percent for this one-year period, such interest amounts to $2,837.19.

We affirm the judgment of the trial court, modified to provide damages to intervenor as follows:

| | |
|---|---|
| Excessive interest paid to Zions | $6,179.43 |
| plus prejudgment interest from May 16, 1975, to July 26, 1980 | 1,927.98 |
| Attorney fees | 10,000.00 |
| plus prejudgment interest from May 16, 1975, to July 26, 1980 | 3,120.00 |
| Mental anguish | 12,500.00 |
| Punitive damages | 50,000.00 |
| Interest lost on $51,585.28 of cattle sales proceeds from July 2, 1973, to June 4, 1974 | 2,837.19 |
| TOTAL | $86,564.60 |

Interest to intervenor on the above amount as accrued in the office of the Utah County Treasurer. No costs awarded.

STEWART and DURHAM, JJ., and DAVID B. DEE, District Judge, concur.

OAKS, J., having disqualified himself, does not participate herein; DEE, District Judge, sat.

HOWE, Justice (concurring and dissenting):

I concur except in Part II, D, dealing with damages for mental anguish. I cannot subscribe to the reduction by the majority of these damages from $25,000 to $12,500.

In the first place, the plaintiff does not contend that $25,000 is excessive. It urges only that damages for mental anguish should not be allowed under the facts of this case. However, *Jeppsen v. Jensen,* 47 Utah 536, 155 P. 429 (1916), and *Samms v. Eccles,* 11 Utah 2d 289, 358 P.2d 344 (1961), seem to provide authority for the trial court's award although I recognize that in those cases the conduct of the defendant was much more egregious than in the instant case. Secondly, this Court usually does not reduce an award of damages unless it finds them to have been given under

"passion and prejudice" by the jury or court below. This was made clear in *Pauly v. McCarthy,* 109 Utah 431, 184 P.2d 123 (1947), where this Court said:

> Where we can say, as a matter of law, that the verdict was so excessive as to appear to have been given under the influence of passion or prejudice, and the trial court abused its discretion or acted arbitrarily or capriciously in denying a motion for a new trial, we order the verdict set aside and a new trial granted ... But mere excessiveness of a verdict, without more, does not *necessarily* show that the verdict was arrived at by passion or prejudice ... But the facts must be such that the excess can be determined as a matter of law, or the verdict must be so excessive as to be shocking to one's conscience and to clearly indicate passion, prejudice, or corruption on the part of the jury.

No assertion is made on this appeal by the plaintiff bank that the damages for mental suffering were given under "passion or prejudice." The majority opinion recognizes the necessity of finding passion or prejudice before punitive damages can be reduced. The same requirement should obtain here with respect to damages for mental suffering. I would affirm the award of $25,000 without reduction.